**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LBS INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:11-cv-00142-DF |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| AARON BROTHERS, INC.; et al | § | |
| | § | |
| *Defendants.* | § | |

---

# PLAINTIFF LBS INNOVATIONS LLC'S
# OPENING CLAIM CONSTRUCTION BRIEF

---

**BUETHER JOE & CARPENTER, LLC**
Christopher M. Joe
Eric W. Buether
Brian A. Carpenter
Niky Bukovcan
1700 Pacific Avenue
Suite 2390
Dallas, Texas  75201
Telephone:     (214) 466-1270
Facsimile:     (214) 635-1827

**ATTORNEYS FOR PLAINTIFF
LBS INNOVATIONS, LLC**

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION……………………………………………………………1

II.     GENERAL PRINCIPLES OF CLAIM CONSTRUCTION …………………………3

III.    DISCUSSION  …...……………………………………………………………7

        A. AGREED CLAIM CONSTRUCTIONS  …..……………………………………7

        B.  DISPUTED CLAIM TERMS  ……………………………………………………7

        1.      "Including, Making Apparent to the Aural and Tactile Senses
                of the User" in the Preamble ……………………………………………8

        2.      "A Computer"/"Said Computer" ………………………………………14

        3.      "Mappable Hypertext Item" …………………………………………16

        4.      "timely situation information" ………………………………………18

        5.      "displaying" …………………………………………………………20

        6.      "optionally executably selected by said user to provide additional of said
                situation information" ……………………………………………………...21

IV.     CONCLUSION ………………………………………………………………...23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Labs. v. Andrizx Pharms, Inc.*,

    473 F.3d 1196 (Fed. Cir. 2007).................................................................. 5, 19

*AbTox, Inc. v. Exitron Corp.*,

    122 F.3d 1019 (Fed. Cir. 1997)................................................................... 14

*Altiris, Inc. v. Symantec Corp.*,

    318 F.3d 1363 (Fed. Cir. 2003)..................................................................... 9

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,

    340 F.3d 1298 (Fed. Cir. 2003)..................................................................... 5

*Baldwin Graphics Sys. v. Siebert, Inc.*,

    512 F.3d 1338 (Fed. Cir. 2007)................................................................... 14

*Bicon, Inc. v. Straumann Co.*,

    441 F.3d 945 (Fed. Cir. 2006).................................................................... 10

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,

    289 F.3d 801 (Fed. Cir. 2002).................................................................. 8-10

*CCS Fitness, Inc. v. Brunswick Corp.*,

    288 F.3d 1359 (Fed. Cir. 2002)..................................................................... 5

*Comark Communs, Inc. v. Harris Corp.*,

    156 F.3d 1182 (Fed. Cir. 1998)................................................................... 22

*Computer Docking Station Corp. v. Dell, Inc.*,

    519 F.3d 1366 (Fed. Cir. 2008)................................................................... 6

*Constant v. Advanced Micro-Devices, Inc.*,

    848 F.2d 1560 (Fed. Cir. 1988)................................................................. 22

*Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*,

    501 F.3d 1254 (Fed. Cir. 2007)................................................................... 3

*Edwards Lifesciences LLC v. Cook, Inc.*,

    582 F.3d 1322 (Fed. Cir. 2009)................................................................... 5

*Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*,

    2010 U.S. Dist. LEXIS 83442 (E.D. Tex. Aug. 11, 2010) ........................ 10

*Hewlett-Packard Co. v. Repeat-O-Type Stencil Manufacturing Corp.*,

    123 F.3d 1445 (Fed. Cir. 1997)............................................................. 8, 13

*Housey Pharms, Inc. v. Astrazeneca UK, Ltd.*,

    366 F.3d 1348 (Fed Cir. 2004)............................................................. 5, 19

*Jack Guttman, Inc. v. Kopykake Enters, Inc.*,

    302 F.3d 1352 (Fed. Cir. 2002)............................................................. 5, 19

*Kraft Foods, Inc. v. Int'l Trading Co.*,

    203 F.3d 1362 (Fed. Cir. 2000)................................................................... 4

*Laitram Corp. v. Cambridge Wire Cloth Co.*,

    863 F.2d 855 (Fed. Cir. 1988), *cert. denied*, 490 (U.S. 1068 (1989) ........................... 4

*Lazare Kaplan Int'l, Inc. v. Photoscribe*,

    628 F.3d 1359 (Fed. Cir. 2010) ........................................................................ 6, 18

*Liebel-Flarsheim Co. v. Medrad, Inc.*,

    358 F.3d 898 (Fed. Cir. 2004) ................................................................................. 4

*Markman v. Westview Instruments, Inc.*,

    517 U.S. 370 (1996) ....................................................................................... 3-4, 6-7

*Mars, Inc. v. H.J. Heinz Co.*,

    377 F.3d 1369 (Fed. Cir. 2004) ............................................................................. 6

*Micron Technology, Inc. v. Tessera, Inc.*,

    440 F. Supp. 2d 591 (E.D. Tex. 2006) .............................................................. 9-10

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*,

    No. 6:06-CV-549, 572 F. Supp. 2d 786 (E.D. Tex. Aug. 14, 2008) ........................ 9

*Omega Eng'g, Inc. v. Raytek Corp.*,

    334 F.3d 1314 (Fed. Cir. 2003) ............................................................................. 6

*Orion IP, LLC v. Staples, Inc.*,

    406 F. Supp. 2d 717 (E.D. Tex. 2005) ................................................................. 21

*Ormco Corp. v. Align Tech., Inc.*,

    463 F.3d 1299 (Fed. Cir. 2006) ............................................................................. 7

*Phillips v. AWH Corp.*,

    415 F.3d 1303 (Fed. Cir. 2005) ................................................. 3-7, 12, 17, 21-22

*Rexnord Corp. v. Laitram*,

    274 F.3d 1336 (Fed. Cir. 2001) ............................................................................. 5

*SanDisk Corp. v. Memorex Products, Inc.*,

    415 F.3d 1278 (Fed. Cir. 2005)............................................................................ 6, 14

*Scanner Technologies Corp. v. ICOS Vision Sys.*,

    365 F.3d 1299 (Fed. Cir. 2004)................................................................................. 14

*Schindler Elevator Corp. v. Otis Elevator Co.*,

    593 F.3d 1275 (Fed. Cir. 2010)................................................................................... 6

*Seachange Intern., Inc. v. C-COR, Inc.*,

    413 F.3d 1361 (Fed. Cir. 2005)................................................................................. 22

*SRAM Corp. v. AD-II Eng'g, Inc.*,

    465 F.3d 1351 (Fed. Cir. 2006)................................................................................... 3

*SRI Int'l v. Matsushita Elec. Corp.*,

    775 F.2d 1107 (Fed. Cir. 1985)................................................................................... 5

*Terlep v. Brinkemann Corp.*,

    418 F.3d 1379 (Fed. Cir. 2005)................................................................................... 3

*Trading Techs Int'l, Inc. v. eSpeed, Inc.*,

    595 F.3d 1340 (Fed. Cir. 2010)................................................................................... 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,

    581 F.3d 1317 (Fed. Cir. 2009)................................................................................... 6

*Vitronics Corp. v. Conceptronic, Inc.*,

    90 F.3d 1576 (Fed. Cir. 1996)............................................................................ 3, 6-7

Plaintiff LBS Innovations LLC ("LBSI"), pursuant to the Court's Docket Control

Order [Dkt. No. 120] and P. R. 4-5(a), submits this Opening Claim Construction Brief.

## I.    INTRODUCTION

LBSI is the owner of U.S. Patent No. 6,091,956 (the "`956 Patent").[1]  The `956 Patent is

a utility patent entitled "Situation Information System."  The application for the `956 patent was

filed on June 12, 1997, and issued on July 18 2000.  LBSI contends that each of the Defendants

has infringed Claim 11 of the '956 Patent.

The invention disclosed in the `956 Patent relates to a "system for providing services and

time-critical information about places and events" to users of computer devices.  `956 Patent,

Abstract.  In particular, the claimed "Situation Information System" pertains to "information

about events or conditions associated with places" which the user of a computer device may

encounter or consider visiting.  Patent, Col. 4:33-47.  In one embodiment, "the situation

information system provides users with up-to-date map-tracking information relating their

location to events and situations as well as enabling them to respond in a timely manner."  Col.

4:48-51.  The specification teaches that, for example, a "distributed system of information

service providers which provide data about geographical features . . . transmit that data . . . for

display." `Col. 8:34-38.  The specification additionally discloses that service providers display

"mappable information items, including map features . . . which may be executably selected by a

user to display additional information . . . by receiving new information transmitted from the

service provider."  Col. 21:55-62.  The specification further explains that "symbols and text

appropriately relating to the [mappable information] items" are graphically displayed "in a

manner which shows each item in a measurably appropriate relation to other such items of

---

[1] A copy of the `956 patent is attached as Exhibit A.

geographical features." Col. 21:62-67. The items are "selectable and may be zoomed in or out." Col. 22:51-53. "Separation between displayed features," as taught in another embodiment, include calculations "using distances derived from latitude and longitude, which have been appropriately converted to distance relationships." Col. 22:65-23:3.

One method for use of the inventive situation information system is described in Claim 11, which comprises the steps of "searching each of one or more unique mappable information code sequences . . . for a field containing geographic coordinates," "converting said coordinates," and "displaying selectably scalably said [mappable hypertext] items." Col. 31:24-45. The full text of Claim 11 provides follows:

> 11. A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, 20 roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects, comprising the steps of:
>
> a. searching each of one or more unique mappable information code sequences, each of which said code 25 sequences serving to uniquely represent one of said items and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates, said each of said code sequences includes an item reference field, a name 30 field, a location field including said geographical coordinates, and a data field,
>
> b. converting said coordinates to an appropriately proportionate representation on said computer, and 35
>
> c. displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which said mappable 40 hypertext items are quickly received, mapped, and optionally executably selected by said user to provide additional of said situation information or received, stored, and transmitted by a provider of said situation information. 45

As reflected in the Joint Claim Construction Statement [Dkt. No. 167], the parties have agreed on a construction for one term and disagree about the construction of five other terms.

## II.    GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

Claim construction is a matter of law exclusively within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Terlep v. Brinkemann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005).  In interpreting the claims, a court is "powerless to rewrite the claims and must construe the language of the claim at issue based on the words used." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006).  The seminal case on claim construction is the *en banc* opinion of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The words of a claim "are generally given their ordinary and customary meaning." *Id.*  Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313.

The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted).

The two types of evidence available in making the determination of what the terms would mean to a person of ordinary skill in the art are intrinsic and extrinsic evidence.  In *Phillips*, the Federal Circuit reconfirmed the supremacy of the intrinsic evidence – claims, specification, and prosecution history – as opposed to extrinsic sources, for determining the ordinary meaning.

First, the court emphasized that claim terms must be interpreted in the context of the entire claim as well as in the context of the other claims.  *Phillips*, 415 F.3d at 1313.  "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."  *Id.* at 1314.  Moreover, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id.*

Second, the court stressed that, beyond the structure and the language of the claims themselves, patent claims "'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (*quoting Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)).  The specification is always highly relevant to the claim construction analysis and, thus, is "'the primary basis for construing the claims.'" *Id.*

The Federal Circuit, however, has repeatedly "warned against confining the claims to those embodiments" shown in the specification.  *Phillips*, 415 F. 3d at 1323; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Although written description may aid in the proper construction of a claim term, limitations, examples, or embodiments appearing only there may not be read into the claim.").  "References to a preferred embodiment, such as those often present in the specification, are not claim limitations." *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988), *cert. denied*, 490 U.S. 1068 (1989); *Am Permahedge, Inc. v.*

*Barcana, Inc.*, 105 F.3d 1441, 1444 (Fed. Cir. 1999) ("Claims, not the specification embodiments, define the scope of the protection."); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  Likewise, the claims cannot be limited by embodiments disclosed in the figures shown in the specification.  *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306-07 (Fed. Cir. 2003) ("[T]he mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration.").  Further, a "patentee need not describe in the specification every conceivable and possible future embodiment of his invention." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

Nevertheless, as the Federal Circuit stated in *Guttman*, "[i]t is black letter law that a patentee can 'choose to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning." *Jack Guttman, Inc. v. Kopykake Enters, Inc.*, 302 F.3d 1352, 1360 (Fed. Cir. 2002) (*quoting Rexnord Corp. v. Laitram*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)).  When the applicant manifests clear intent to define a term more broadly or more narrowly than its ordinary meaning, the court should construe the term in question accordingly.  *See, e.g., Housey Pharms, Inc., v. Astrazeneca UK, Ltd.*, 366 F.3d 1348, 1353-54 (Fed. Cir. 2004); *Abbott Labs. V. Andrizx Pharms, Inc.*, 473 F. 3d 1196, 1210 (Fed. Cir. 2007); *Trading Techs Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010); *Edwards Lifesciences LLC v. Cook, Inc.*, 582 F. 3d 1322, 1334 (Fed. Cir. 2009); *Astrazenaeca AB v. Mut. Pharm. Co.*, 384 F. 3d, 1339 – 40 (Fed. Cir. 2004).

Finally, in addition to the claim itself, the surrounding claims, and the specification, the Court "should also consider the patent's prosecution history." *Phillips*, 415 F.3d at 1317 (*quoting*

*Markman*, 52 F.3d at 980).   The prosecution history contains a complete record of all proceedings before the Patent and Trademark Office ("PTO").   *Vitronics*, 90 F.3d at 1582. "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips*, 415 F.3d at 1317 (*citing Vitronics*, 90 F.3d at 1582-83).

There is, however, "a 'heavy presumption' that claim terms carry their full ordinary and customary meaning . . . unless the patentee unequivocally imparted a novel meaning to those terms [i.e.*,* acted as her own lexicographer] or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F. 3d 1314, 1323 (Fed. Cir. 2003).   The relinquishment of claim scope during prosecution is frequently referred to as "prosecution disclaimer" or "prosecution history disclaimer."   *Id.*; *Mars, Inc. v. H. J. Heinz Co.*, 377 F. 3d 1369, 1377 (Fed. Cir. 2004).

The Federal Circuit has consistently stated that the patentee's disavowal of claim scope must be clear and unmistakable. *Lazare Kaplan Int'l, Inc. v. Photoscribe*, 628 F. 3d 1359, 1370 (Fed. Cir. 2010); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F. 3d 1317, 1324 (Fed. Cir. 2009); *Omega,* 334 F.3d at 1326.   There is no clear and unmistakable disavowal where the prosecution argument "is subject to more than one reasonable interpretation."   *Sandisk Corp. v. Memorex Prods.*, 415 F. 3d 1278, 1287 (Fed. Cir. 2005).   "It is inappropriate to limit a broad definition of a claim term based on prosecution history that is itself ambiguous."   *Mars*, 377 F. 3d at 1377; *see Omega,* 334 F.3d at 1325.   In other words, "ambiguous disavowal" does not suffice.   *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F. 3d 1275, 1285 (Fed. Cir. 2010) (*quoting Computer Docking Station Corp. v. Dell, Inc.*, 519 F. 3d 1366, 1375 (Fed. Cir. 2008)).

Extrinsic evidence consists of all evidence external to the patent and the prosecution history, including expert and inventor testimony, dictionaries, and learned treatises. *Phillips*, 415 F.3d at 1317; *Markman*, 52 F.3d at 980; *see also Vitronics*, 90 F.3d at 1583. Extrinsic evidence may be considered in claim construction, but only where such evidence is not contrary to the claim construction mandated by the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1318; *see Markman*, 52 F.3d at 980; *see also Vitronics*, 90 F.3d at 1583. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms..." *Phillips*, 415 F.3d at 1318.

Written extrinsic evidence, especially evidence such as technical dictionaries, is more reliable and helpful than testimonial extrinsic evidence and remains a valuable and permissible resource for determining the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1314, 1318. The court may appropriately look to dictionary definitions to determine the plain and ordinary meaning of claim terms. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1306 (Fed. Cir. 2006). The Federal Circuit, however, has warned that extrinsic evidence in the form of expert testimony generated at the time of litigation suffers from bias not present in the intrinsic record. *Phillips*, 415 F.3d at 1318. Because of such bias, expert testimony should "rarely, if ever" be used to show the proper construction of a claim term. *Vitronics*, 90 F.3d at 1585.

## III.  DISCUSSION

### A.  AGREED CLAIM CONSTRUCTIONS

The parties have agreed to the construction of the following claim term:

| Claim Term | Agreed Upon Construction |
|---|---|
| "selectably scalably" | "capable of being chosen for adjustment in size or detail" |

## B.   DISPUTED CLAIM TERMS

A chart summarizing each party's proposed construction and positions is attached as Exhibit B.  LBSI requests that the Court adopt its constructions based on the discussion below.

| Claim Term | Plaintiff LBSI's Proposed Construction |
|---|---|
| "including, making apparent to the aural and tactile senses of the user" | This phrase in the preamble is not a limitation |

### 1.   "Including, Making Apparent to the Aural and Tactile Senses of the User" in the Preamble

This disputed claim language appears in the preamble of Claim 11.  In accordance with well-established claim construction principles, the preamble is not a limitation except to the extent that the phrase "one or more transmittable mappable hypertext items" is the antecedent reference for the term "items" and "a computer" is the antecedent reference for the term "said computer" in the body of Claim 11.

Whether to treat a preamble term as a claim limitation is "determined on the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 831 (Fed. Cir. 2003).  While there is no simple test for determining when a preamble limits claim scope, the Federal Circuit has set forth some general principles to guide that inquiry.  "Generally," the Federal Circuit has held, "the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002).  Nonetheless, the preamble may be construed as limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002), quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999).  A preamble is not regarded as limiting, however, "when the claim body describes a structurally complete invention such that

deletion of the preamble phrase does not affect the structure or steps of the claimed invention." *Catalina,* 289 F.3d at 809.  If the preamble "is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a [prior art] rejection), we do not construe it to be a separate limitation."  *Symantec Corp. v. Computer Assocs. Int'l, Inc.,* 522 F.3d 1279, 1288-89 (Fed. Cir. 2008).  *See also Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, 572 F. Supp. 2d 786, 799 (holding that, when the preamble does not limit claim scope, it is "of no significance to claim construction" and does not require construction) (*quoting Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1371 (Fed. Cir. 2003).

Also, as this Court has explained, "[w]hen limitations in the body of a patent claim rely upon, and derive antecedent basis from, the claim preamble, the preamble may act as a necessary component of the claimed invention."  *Micron Technology, Inc. v. Tessera, Inc.*, 440 F.Supp. 2d 591, 614 (E.D. Tex 2006).   In such a circumstance, however, only the antecedent references in the preamble constitute claim limitations, and the preamble as a whole does not.  *See Abb Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*, 254 F.Supp. 2d 475 (D.Del. 2003) ("The antecedent basis for the 'said input voltage' is within the preamble" and, therefore, a limitation. "However, the phrase 'for use in apparatus for electronically measuring or distributing electrical energy' merely indicates an intended use and does not operate to limit the scope of the claims.")

In *Micron*, for example, this Court found that the phrase "a memory array in which a plurality of memory circuit devices are arranged" was limiting because "memory array" and "memory circuit devices" provided an antecedent basis for those terms in the body of the claim in question (citing *Micron*, 440 F.Supp. 2d at 614-615).   "However," the Court held, "the

remainder of the preamble is not limiting because it describes the claimed invention's purpose or intended use, rather than describing essential structure.  [citations omitted].  This segment of the preamble describes how the arrangement of memory devices may allow memory information to be obtained, but it does not describe any essential structure."  (citing *Micron*, 440 F.Supp. 2d at 615).  Similarly, in *Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2010 U.S. Dist. LEXIS 83442 (E.D. Tex. Aug. 11, 2010), this Court found that "the preamble does not provide an antecedent basis for nearly all of the claim elements" and, therefore, held that the specific preamble phrase at issue which did not provide an antecedent basis was not a limitation.  *Id.* at 8.

For the same reason, the preamble to Claim 11 as a whole is not a claim limitation.  Only the antecedent references "one or more transmittable mappable hypertext items" and "a computer" are limitations.  The disputed phrase "including, making apparent to the aural and tactile senses of the user" is not an antecedent reference for any claim language in the body of Claim 11.

Moreover, this language in the preamble is not necessary to give life, meaning, and vitality to the claims.  It merely describes a potential use of the invention.  Use descriptions such as the disputed phrase are rarely treated as claim limitations.  *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("[p]reamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim.")  The phrase could be deleted from the claim without having any effect on the claimed method.  Where "deletion of the preamble phrase does not affect the structure or steps of the claimed invention," the preamble cannot be deemed as a limitation.  *Catalina*, 289 F.3d at 809.  Claim 11 of the '956 Patent is a method claim that enumerates the necessary steps only in the body of the claim.  No steps or are recited in the preamble.  The steps of the method claim are entirely laid out in the body of the

Claim: "searching each of one or more unique mappable information code sequences . . . for a field containing geographic coordinates…," "converting said coordinates . . . ," and "displaying selectably scalably said items. . . ." Col. 31:24-45. Deletion of the disputed preamble language would, otherwise, not change or affect the method claimed. Furthermore, the patentee did not rely on the phrase to define the invention or overcome prior art.

The best evidence demonstrating that the phrase "including, making apparent to the aural and tactile senses of the user" does not recite an essential step or is "necessary to give life, meaning, and vitality" to Claim 11 is found in the prosecution history. Claim 11 ultimately issued from what was initially filed as Claim 17, which was dependent on original independent Claim 16. These two original claims read as follows:

16.   A method of displaying one or more transmittable mappable hypertext items representing objects, including buildings, roads, vehicles, and signs, on the display of a computer in a manner scalably representing the interrelationships of said objects by

a.      searching each of one or more unique mappable information code sequences, each of which uniquely representing one of said items and taken from the memory of said computer, for a field containing geographical coordinates,

b.      converting said coordinates to an appropriate rectangular grid sized for appropriate proportionate display, and

c.      selectably scalably appropriately displaying said items on said computer display whereby a user may quickly receive and display timely situation information mapped in the context of geographical information appropriate to an area.

17.   The method in claim 16 wherein each of said mappable information code seqeuences is an information sequence including:

a.      an item reference field,

b.      a name field,

c.      a location field including said geographical coordinates, and

      d.      a data type field whereby said mappable graphical items may be quickly received, mapped, and optionally executably selected by the user to provide additional situation information or received, stored, and transmitted by the situation information service provider.

Exhibit C at LBSI000063.

In a January 21, 1999 Office Action, the Examiner explicitly stated that "Claim 17 … [is] objected to as being dependent upon a rejected base claim, *but would be allowable if rewritten in dependent form* including all of the limitations of the base claim and any intervening claims." *See* Exhibit C at LBSI000141 (emphasis added).  The Examiner clearly concluded that Claim 17, as written, was allowable without the need to make **any** amendments other than rewriting Claim 17 to be in independent form.  Because Claim 17 was dependent on Claim 16, such rewriting simply required including the entirety of the limitations of Claim 16 and Claim 17 in a single, independent claim.  *See* Exhibit C at LBSI000161-62; 173; 251-52.

Significantly, neither original Claim 16 nor original Claim 17 contained the language "making apparent to the aural and tactile senses of the user" (or any similar language) at the time the Examiner concluded that these claims were allowable.  Although this language was included in the preamble to what ultimately issued as Claim 11, such language was not added in response to any rejection by the Examiner or to distinguish the claim from any alleged prior art.  The inclusion of this language in the preamble of Claim 11 was unnecessary to the patentability of the claimed invention and could be deleted without any effect on the claimed method.  Thus, the added language should not be construed as a limitation.

Furthermore, when viewed in the context of the entire claim, *see Phillips*, 415 F.3d at 1313, the transitional term "including" in combination with the phrase "making apparent to the aural and tactile senses of the user" serve to describe only the various options for performing the

method.  The claim term "including" is not a limiting transitional phrase or modifier.  *Hewlett-Packard Co. v. Repeat-O-Type Stencil Manufacturing Corp.*, 123 F.3d 1445 (Fed. Cir. 1997) ("The claim term 'including' is synonymous with 'comprising' thereby permitting the inclusion of named components.").  Thus, in addition to this phrase being clear and understandable to a fact finder, the context of the claim does not limit the preamble.

Finally, there is nothing in the specification mandating that this phrase be construed as a claim limitation.   The specification's references to the phrase merely reflect that "making apparent to the aural and tactile senses of the user" is an example of one manner of performing the method claimed.   For example, in describing the background of the invention, the inventor states, "[s]imilarly, people with physical challenges could function more freely in public places with the aid of a system which provided them with a specifically **appropriate combination of aural, visual, and tactile information** about their location.  Col. 1:45-49 (emphasis added).  In describing one embodiment, the inventor also states, "one such transceiver of subject invention provides voice communications . . . which term **includes all forms of sensory media such as tactile and aural as well as visual** . . ."  Col. 5:47-52. (emphasis added).  Indeed, the word "including" juxtaposed with the phrase "making apparent to the aural and tactile senses of the user" demonstrates that the phrase merely reflects an example of an intended use and should not be construed as a limitation.

For these reasons, the Court should not construe the preamble phrase "including, making apparent to the aural and tactile senses of the user" to be a claim limitation.

## 2. "a computer"/"said computer"

| Claim Term | Plaintiff LBSI's Proposed Construction |
|---|---|
| "a computer" | "one or more computers" |
| "said computer" | "at least one of the one or more computers" |

The phrases "a computer" and "said computer" should be construed to mean "one or more computers" and "at least one of the one or more computers," respectively.

The Federal Circuit has "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v. Sibert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  The court commented that this interpretation can "best [be] described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.' . . . An exception to the general rule that 'a' or 'an' means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." *Id*. at 1342-43 (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)) (alterations in original).  *See also Scanner Technologies Corp. v. ICOS Vision Sys*, 365 F.3d 1299, 1304 (Fed. Cir. 2004) (finding "no clear intent" to limit the claim where "the specification is at best inconclusive on the patentee's intent to limit that article to a single element").  *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997).

In view of this basic principle of claim construction, "the use of a definite article ('said' or 'the') to refer back to an initial indefinite article does not implicate, let alone mandate the singular.  Because the initial indefinite article ('a') carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality." *Baldwin Graphics*, 512 F.3d at 1343.  *See also SanDisk Corp. v. Memorex Products, Inc.*, 415

F.3d 1278 (Fed. Cir. 2005) (holding that the claims use of articles such as "the array" and "said array" merely "provide an antecedent basis for various steps of the claimed method" and do not exclude other configurations of cells).

There is nothing in the language of the claims of the `956 patent compelling a construction contrary to the general rule.  Claim 11 initially refers to "a computer" in the preamble and then uses the open-ended transitional word "comprising."  The instances of "said computer" that appear in the body of the claim refer back to the initial antecedent phrase "a computer," which carries no definitive numerosity that would indicate an intent to limit the construct to the singular.  Even dependent Claim 13, which receives its antecedent basis for the term "computer" ultimately from Claim 11 recites, "said user may choose representation by a unique icon on said computer which can be made to execute on others of **said computers**."  Col. 32:5-9 (emphasis added).

Second, the exemplary embodiments of the invention described in the specification describe systems including multiple computers.  For example, Figure 1 shows an embodiment where RF antennas "transmit and receive information from mobile computers."  Col. 11:43-48; *see also* Abstract.  In another embodiment, Figure 5 shows a situation information system including mobile computers and a service provider system having a "differential computer" and is connected to "other systems including **global communications network** . . . by way of **computer network**."  Col. 17:38-42; *see also* Col. 11:60-62 and14:19-21.  The term "global communications network" and "computer network" necessitate more than one computer.  Other embodiments similarly involve the use of "computer network(s)."  *See, e.g.,* Cols. 23:45 and 24:23.  Thus, the specification does not evince any intent to limit the invention to a single computer is implicated.

Finally, there is nothing in the prosecution history that would suggest deviation from the customary rule of construction for articles "a" and "said."   Accordingly, the Court should construe "a computer" to mean "one or more computers" and "said computer" to mean "at least one of the one or more computers."

The Defendants' proposed alternative construction – "the user's computer" – is erroneous because it violates this claim construction rule by limiting the term "a computer" to a single computer and further limiting it to a user's single computer.  Claim 11 consistently uses the term "computer" without reference to a "user's" computer.  Defendants' proposed construction is nothing more than an improper attempt to manufacture a divided infringement argument through a claim construction position that is contrary to established claim construction principles.

### 3.   "mappable hypertext item"

| Claim Term | Plaintiff LBSI's Proposed Construction |
|---|---|
| "mappable hypertext items" | "text or one or more symbols, displayable in a spatial relationship to another item, that can be selected to access additional information" |

The phrase "mappable hypertext items" should be construed as "text or one or more symbols, displayable in a spatial relationship to another item, that can be selected to access additional information."   Although Defendants' proposed construction is similar, LBSI's proposed construction is better aligned with the intrinsic and extrinsic evidence.

Claim 11 recites "searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of **said items** and copied from the memory of said computer or received from an alternate source, for a field containing geographical coordinates . . . ."  Col. 31:24-29 (emphasis added).  As discussed above, "said items" refers back to the initial antecedent phrase "mappable hypertext items" contained in the preamble.  The Claim further requires "**displaying**   selectably scalably said

[mappable hypertext items] on said computer whereby said user may quickly **receive** and **display** timely situation **information** mapped in the context of spatial **information**."   Col. 31:35-38 (emphasis added).   As is evident from the language of the claim, a "mappable hypertext item" is displayable and can be selected to access additional information.

Additionally, the inventor has defined this term in the specification consistent with LBSI's proposed construction.  The specification teaches that "a computer memory organized to include mappable hypertext code 29 sequence . . . **which may be executably selected by a user in order to display additional information** . . . code 29 provides for graphically **displaying** on the user's display **symbols or text** . . . **in a manner which shows each item in a measurably appropriate relation to other such items**."   Col. 21:55-22:4 (emphasis added); *see also* Col. 11:23-26 ("[M]appable hypertext code sequence" is "individually called mappable hyper-text items") (also cited by Defendants).   In describing another embodiment, the inventor states, "graphical display unit…shows information including . . . direction symbol . . . which **symbol can be a mappable hypertext item** that the **user may executably select in order to receive additional information**."   Col. 12:22-36 (emphasis added); *see also* Col. 13:30-38 ("[M]appable hypertext items, may be executably selected by user to provide additional information…").  When the inventor reveals a special definition given to a claim term, the inventor's lexicography governs.  *Phillips*, 415 F.3d at 1316.

The extrinsic evidence likewise supports LBSI's construction.  Hypertext is "a method of storing data through a computer program that allows a user to create and link fields of information at will and to retrieve the data nonsequentially."  RANDOM HOUSE UNABRIDGED DICTIONARY 942 (2nd ed. 1993).  Hypertext can also refer to "[a] way of presenting information online with connections between one piece of information and another, called hypertext links."

IBM DICTIONARY OF COMPUTING 321 (10th ed. 1993).   An "item" is "a separate piece of information."  RANDOM HOUSE UNABRIDGED DICTIONARY 1016 (2nd ed. 1993).  Thus, LBSI's proposed construction is fully supported by the intrinsic and extrinsic evidence.

The Defendants seek to impose the limitation that the "symbol, icon, or text item . . . be included in the map displayed on a computer and selected or clicked on."  Nothing in the claim language or other intrinsic evidence imposes the requirement that the "mappable hypertext item" be included in the map displayed or display be confined to that shown on a computer only or that the selection of the item be limited to "clicking."  On the contrary, as shown above, the evidence cited by the Defendants in the Joint Claim Construction Statement supports LBSI's proposed construction.   Additionally, nothing in the prosecution history contradicts LBSI's proposed construction or restricts the phrase to Defendants' proposed limitations.    No clear and unmistakable disavowal of claim scope can be shown.  *See Lazare Kaplan*, 628 F. 3d at 1370.  Accordingly, the Court should construe "mappable hypertext items" as "text or one or more symbols, displayed in a spatial relationship to another item, that can be selected to access additional information."

### 4.   "timely situation information"

| Claim Term | Plaintiff LBSI's Proposed Construction |
| --- | --- |
| "timely situation information" | "current information about specific places, events, or their details" |

The phrase "timely situation information" should be construed to mean "current information about specific places, events, or their details."  Although the Defendants' proposed construction appears to be similar, it imposes unnecessary limitations on the phrase.  As shown below, LBSI's proposed construction is better aligned with the intrinsic evidence.

Claim 11 recites, "displaying selectably scalably said [mappable hypertext items] on said computer whereby said user may quickly receive and display timely situation information . . . ." Col. 31:36-38.   The inventor in the specification defines the phrase "timely situation information".   The inventor teaches that, "[w]hile people's need for information that specifically fits their needs has increased, the availability, accessibility, and timeliness of this **information, about specific places, events, and their details**, <u>called situation herein</u>, have decreased."  Col. 1:35-39 (emphasis added).   In another description he explains that "**Information about places and their events**, <u>situation information</u>, helps people function closer to their potential."  Col. 2:57-59.  In describing the term "timely" in relation to information sought by a user, the inventor states, for example, "**current** service provider information…" or "the user requires more **current** information…" or "**current** location."  *E.g.* Col. 13:50, 19:46, 26:53, 10:33, and Abstract. When thus combined, the inventor has defined the phrase "timely situation information" as "current information about specific places, events, or their details."

If the inventor's intent to act as his own lexicographer is clear, the court must construe the claim accordingly.   *Guttman,* 302 F.3d at 1360.   An example of a phrase that has been found to clearly set forth an inventor's intent to act as his own lexicographer is the phrase, "the term ____, as used herein, includes _____."  *See Housey Pharms, Inc., v. Astrazeneca UK, Ltd.*, 366 F.3d 1348, 1353-54 (Fed. Cir. 2004); *Abbott Labs. V. Andrizx Pharms, Inc.*, 473 F. 3d 1196, 1210 (Fed. Cir. 2007).  The phrase "as used herein" is very similar to the one the inventor has used in this case: "information, about specific places, events, and their details, **called situation herein**."  Col. 1:39 (emphasis added).  It is also indicated by the inventor's use of the term offset by commas: "Information about places and their events, **situation information**,…"  Col. 2:57-59 (emphasis added).  Thus, the court should construe the term "timely situation information" in

accordance with the inventor's clear manifestation of intent to define the term to mean "current information about specific places, events, or their details."

### 5.   "displaying"

| Claim Term | Plaintiff LBSI's Proposed Construction |
|---|---|
| "displaying" | "causing to appear" |

The term "displaying" should be construed to mean "causing to appear."  The relevant language of Claim 11 states "displaying . . . said items on said computer whereby said user may quickly receive and display timely situation information . . . ."  Col. 31: 36-38.  This language demonstrates that the claimed method requires making the "mappable hypertext items" appear on one or more computers so a user can, but is not required to, receive and display timely situation information.  The claim language does not require any specific person (or category of persons), such as a user of mappable hypertext items, to do the displaying.  The "displaying" language does not denote the performer of that action.  The performer of the "displaying" action can be someone other than the recipient user of the displayed mappable hypertext items.

The specification supports LBSI's construction.  For example, in one embodiment "a menu of available lists are **caused to appear** on [a] device display…"  Col. 25:18-21 (emphasis added); *see also* Col. 16:30.  In another embodiment, when "the user's location . . . approaches within a selectable distance . . . proximate station banner . . . **appears on [a] display** . . . ."  Col. 13:30-33.  A different mode of the invention allows a user to "conduct a search of current service-provider information and which **results appear on [a] display** . . . ."  Col. 13:50-51. The inventor uses similar descriptions to teach other embodiments.  *See, e.g.*, Col. 16:30, 19:28-30, 22:18-22.  Additionally there is nothing in the prosecution history that compels a different construction.  Thus, the Court should clarify the meaning of the term "displaying" by construing it to mean "causing to appear."

6.    **"optionally executably selected by said user to provide additional of said situation information"**

| Claim Term | Plaintiff LBSI's Proposed Construction |
|---|---|
| "optionally executably selected by said user to provide additional of said situation information" | This phrase does not require construction except for the term "situation information" discussed above |

LBSI contends that, except for the term "situation information," which should be construed as discussed above with reference to "timely situation information," this phrase does not require construction and should be given its plain and ordinary meaning as understood by a person of ordinary skill in the art.

When read in context, this claim language does not require construction. *See Phillips*, 415 F.3d at 1313 ("claim terms must be interpreted in the context of the entire claim"). Claim 11 recites "displaying . . . said items on said computer whereby said user may quickly receive and display timely situation information . . . in which said mappable hypertext items are quickly received, mapped, and **optionally executably selected by said user to provide additional of said situation information** . . . ." Col. 31:35-43 (emphasis added). When a proper construction for the term "situation information" is provided, as discussed above, there is no need to construe the phrase. Each subset of terms within this phrase ("optionally," "executably selected," "by said user," "to provide," etc.) is clear and understandable to a fact finder. *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (stating that "although every word used in a claim has meaning, not every word requires construction" in declining to construe claim terms).

The Defendants' proposed construction of this phrase – "displayed in a manner that permits the user to select the item to automatically provide additional situation information about the item" – is improper for several reasons. Defendants' rewrites the claim language and injects limitations into the claim from a single embodiment. The Defendants cite the description of an

embodiment at column 22, lines 15-35 to support their proposed construction.  Although this is a description of one exemplary embodiment of the present invention, it is just that – exemplary. Importing language such as "displayed in a manner" and "automatically" from a single embodiment is unfounded.  *See Comark Communs, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'") (*quoting Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.  The phrase itself does not contain any language that can reasonably be interpreted as requiring a "displayed in a manner" or "automatically" limitation.  It is improper to read such limitations into the claim language.

The Defendants also point to dependent Claims 12 and 13 to support their assertion. Neither of these dependent claims, however, further modifies Claim 11 in a manner that would justify importation of limitations such as "displayed in a manner" and "automatically," nor are they relevant to the phrase proposed for construction.  *See* Claims 12 and 13.  Even if these dependent claims further limited Claim 11 in this regard, importation of their limitation into Claim 11 would be improper and would violate the doctrine of claim differentiation as Claim 11 is presumed to be broader than its dependent claims.  *See Seachange*, 413 F.3d at 1368 ("different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope").

Finally, the Defendants do not cite to any prosecution history to support their restrictive construction for the simple fact that there is nothing in the prosecution history to suggest that the inventor clearly disclaimed or disavowed claim coverage mandating the Defendants' proposed

construction.   Thus,   the   Court   should   decline   to   construe   this   phrase   except   for   the   term "situation information" discussed above.

## VI.   CONCLUSION

For the foregoing reasons, the Court should construe the disputed claim terms as proposed by Plaintiff LBSI.

Dated:  December 13, 2011                    Respectfully submitted,

                                             **BUETHER JOE & CARPENTER, LLC**

                                             By:     */s/ Eric W. Buether*
                                                     Christopher M. Joe *(Lead Counsel)*
                                                     State Bar No. 00787770
                                                     Chris.Joe@BJCIPLaw.com
                                                     Eric W. Buether
                                                     State Bar No. 03316880
                                                     Eric.Buether@BJCIPLaw.com
                                                     Brian A. Carpenter
                                                     State Bar No. 03840600
                                                     Brian.Carpenter@BJCIPLaw.com
                                                     Niky Bukovcan
                                                     WA State Bar No. 39403
                                                     Niky.Bukovcan@BJCIPLaw.com

                                                     1700 Pacific Avenue
                                                     Suite 2390
                                                     Dallas, Texas 75201
                                                     Telephone:     (214) 466-1271
                                                     Facsimile:     (214) 635-1827

                                                     **ATTORNEYS FOR PLAINTIFF**
                                                     **LBS INNOVATIONS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 13th day of December 2011. Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Eric W. Buether*
Eric W. Buether