**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| LBS INNOVATIONS LLC, | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No. 2:11-cv-00142-DF |
| | § | |
| v. | § | Jury Trial Demanded |
| | § | |
| AARON BROTHERS, INC.; et al | § | |
| | § | |
| *Defendants.* | § | |

---

# PLAINTIFF LBS INNOVATIONS LLC'S
# REPLY CLAIM CONSTRUCTION BRIEF

---

**BUETHER JOE & CARPENTER, LLC**
Christopher M. Joe
Eric W. Buether
Brian A. Carpenter
Niky Bukovcan
1700 Pacific Avenue
Suite 2390
Dallas, Texas  75201
Telephone:      (214) 466-1270
Facsimile:      (214) 635-1827

**ATTORNEYS FOR PLAINTIFF
LBS INNOVATIONS LLC**

# TABLE OF CONTENTS

**Page**

I.   DISCUSSION .................................................................................................. 1

    A.   DISPUTED CLAIM TERMS ............................................................... 1

        1.   "including, making apparent to the aural and tactile senses of the user" in the Preamble ................................................................. 1

        2.   "a computer" / "said computer" ................................................ 5

        3.   "mappable hypertext item" ........................................................ 6

        4.   "timely situation information" ................................................... 7

        5.   "displaying" .............................................................................. 8

    B.   CLAIM 11 IS SUFFICIENTLY DEFINITE ......................................... 9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bancorp Services, L.L.C. v. Hartford Life Insurance Co.*,
  359 F.3d 1367, 1372 (Fed. Cir. 2004) ..........................................................9

*Bell Communications Research, Inc. v. Vitalink Communications Corp.*,
  55 F.3d 615, 620 (Fed. Cir. 1995)................................................................3

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)..................................................................2, 5

*Geomas Ltd. v. Idearc Media Services-West, Inc.*,
  2008 U.S. Dist. LEXIS 97170  *18-19 .......................................................10

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367, 1385 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987)..................10

*Kenexa Brassring Inc. v. Taleo Corp.*,
  No. 07-521-SLR, 2009 U.S. Dist. LEXIS 12002 (D. Del. Nov. 18, 2010) ...................8

*Kraft Foods, Inc. v. Int'l Trading Co.*,
  203 F.3d 1362, 1366 (Fed. Cir. 2000)...........................................................4

*Mannatech, Inc. v. Glycobiotics International, Inc.*,
  No. 3:06-cv-00471-BD, 2007 LEXIS 91946, n. 4 (N.D. Tex. Dec. 14, 2007).........9, 10

*Morton International, Inc. v. Cardinal Chemical Co.*,
  5 F.3d 1464, 1470 (Fed. Cir. 1993)............................................................10

*Muniauction, Inc. v. Thomson Corp.*,
  2006 U.S. Dist. LEXIS 57461 (W.D. Pa. Aug. 15, 2006) .............................8

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
  806 F.2d 1565, 1576 (Fed. Cir. 1986)........................................................10

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)...................................................................4

*Poly-Am v. GSE lining Tech., Inc.*,
  383 F. 3d 1303, 1310 (Fed. Cir. 2004).........................................................4

*S3 Inc. v. nVIDIA Corp.*,
     259 F.3d 1364, 1369 (Fed. Cir. 2001)...........................................................................10

*Salazar v Procter & Gamble Co.*,
     414 F.3d 342, 1345 (Fed. Cir. 200.................................................................................3

*Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*,
     326 F. Supp. 2d 1060 (C.D. Cal. 2003) .........................................................................8

Plaintiff LBS Innovations LLC ("LBSI") submits this Reply in response to Defendants' Responsive Claim Construction Brief ("Response").

## I.    DISCUSSION

### A.    DISPUTED CLAIM TERMS

#### 1.   "including, making apparent to the aural and tactile senses of the user" in the Preamble

Defendants attempt to convert the preamble language "including, making apparent to the aural and tactile senses of the user" into a claim limitation by asserting that this phrase was clearly relied on during prosecution to overcome prior art. This assertion is demonstrably false. As clearly shown by the prosecution history, the preamble language was not necessary to the patentability of Claim 11. As previously explained, Claim 11 issued from what was initially filed as Claim 17, which depended upon original independent Claim 16. The Examiner explicitly stated the following:

> *Allowable Subject Matter*
>
> 7.   **Claims 17-19** are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

Plaintiff's Opening Brief Exhibit C, Prosecution History Excerpts, at LBSI000141. Neither original Claim 16 nor 17 contained the phrase "including making apparent to the aural and tactile senses of the user," as shown in the following excerpt from the prosecution history:

> 16. A method of displaying one or more transmittable mappable hypertext items representing objects, including buildings, roads, vehicles, and signs, on the display of a computer in a manner scalably representing the interrelationships of said objects by

a. searching each of one or more unique mappable information code sequences, each of which uniquely representing one of said items and taken from the memory of said computer, for a field containing geographical coordinates,

b. converting said coordinates to an appropriate rectangular grid sized for appropriate proportionate display, and

c. selectably scalably appropriately displaying said items on said computer display whereby a user may quickly receive and display timely situation information mapped in the context of geographical information appropriate to an area.

17. The method in claim 16 wherein each of said mappable information code sequences is an information sequence including:

a. an item reference field,

b. a name field,

c. a location field including said geographical coordinates, and

d. a data type field whereby said mappable graphical items may be quickly received, mapped, and optionally executably selected by the user to provide additional situation information or received, stored, and transmitted by the situation information service provider.

Plaintiff's Opening Brief Exhibit C at LBSI000141.  The phrase "making apparent to the aural and tactile senses of the user" was **not** added in response to a rejection by the Examiner or to distinguish the claim over prior art.  Notably, Defendants fail to cite a single statement by the patentee or the Examiner that discusses any of the preamble language with regard to a rejection, amendment or the prior art.  Instead, Claim 11 was allowed because the combination of original Claims 16 and 17 constituted allowable subject matter.

Only "clear reliance on the preamble during prosecution to distinguish the claimed invention over prior art transforms the preamble into a claim limitation…[w]ithout such reliance, however, the preamble is generally not limiting…"  *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-809 (Fed. Cir. 2002).  As demonstrated by the excerpts above, and the prosecution history as a whole, there was absolutely no reliance on the preamble during prosecution to distinguish the invention over prior art.  Accordingly, the general rule that the preamble is not a limitation applies.

Although the patentee replaced the phrase "a method for displaying one or more…items" with the phrase "a method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more… items," this was done on April 19, 1999, **after** original Claim 17 was allowed on January 13, 1999.  Plaintiff's Opening Brief Exhibit C at LBSI000174.  In fact, the Examiner cited the reason for allowance on January 13, 1999, as follows:

```
8.   The following is a statement of reasons for the indication
of allowable subject matter: the prior art of record fails to
disclose information code sequences which includes an item
reference field, a name field, a location field and a data type
field whereby mappable graphical items are received, mapped and
executably selected by a user to provide additional situation
information or received stored and transmitted by the situation
information service provider in a method of displaying
transmittable hypertext items as required by claim 17.
Furthermore, claims 18 and 19 depend from claim 17.
```

Plaintiff's Opening Brief Exhibit C at LBSI000142.  Subsequent to this statement, no other rejections were made.  Hence, the subsequent amendment replacing a portion of the preamble was not done to distinguish prior art, and the Defendants' assertion to the contrary is false.[1]

In conjunction with their misrepresentation of the prosecution history, the Defendants also attempt to read select preferred embodiments into the claim via the preamble.  The preamble must be construed consistently with the basic principles of claim construction.  *Bell Communications Research, Inc. v. Vitalink Communications Corp*., 55 F.3d 615, 620 (Fed. Cir. 1995).  As such, the court may not read "limitations, examples, or embodiments appearing only

---

[1]        Defendants also rely on the Notice of Allowance.  However, the Notice of Allowance is of no importance here since the Examiner had already allowed the claim without the disputed phrase.  Furthermore, an applicant is under no duty to respond to the reasons for allowance.  *See*, *generally Salazar v Procter & Gamble Co.*, 414 F.3d 342, 1345 (Fed. Cir. 2005).

[in the written description]" into the claims. *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000).

Defendants contend that the claimed method somehow requires that information be conveyed to the user *only* through aural and tactile means. Response at 5-6. The specification, however, is clear that "making apparent to the aural and tactile sensors of the user" is only one of the many forms of communication available. *See, e.g.*, Col. 1:48-49 ("aural, visual, and tactile information"); Col. 16, l:27-42 (describing embodiment in which information "appear[s] on the display" without any other forms of sensory media) . Defendants also conveniently leave out key words that indicate exemplary language in quoting limitations from embodiments. *See, e.g.*, Response at 5 citation to Col. 5:51-52 (correctly quoted: "which term includes all forms of sensory media **such as** tactile and aural as well as visual"); Response at 6 citation to Col. 8:45-47 (completely stated: "Each feature is [coded] to be displayed or otherwise executed, aurally, **for example**").

The Defendants' reliance on *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999) is misplaced. In that case, the phrase "generated shapes" appeared in ***both*** the preamble and the body of the claim, and its first appearance in the preamble served as an antecedent reference for its later appearance in the body of the claim for "**the** generated shapes." *Id.* at 1302, 1306 (emphasis added). Although a term that appears in both the preamble and the body of the claim may be a limitation in so far as it serves as an antecedent reference, the phrase "including, making apparent to the aural and tactile senses of the user" does not appear anywhere in the body of the claim 11, does not provide antecedent basis for any terms in the body of claim 11, and does not recite any necessary structure or steps for performance of the method.[2]

---

[2]     Defendants also rely on *Poly-Am v. GSE lining Tech., Inc.,* 383 F. 3d 1303, 1310 (Fed. Cir. 2004) which is limited to its facts. For example, there, the preamble term that was found limiting was repeated verbatim in the

The phrase "including, making apparent to the aural and tactile senses of the user" merely serves to describe the purpose or potential use of the invention. *See Catalina*, 289 F.3d at 809. *Catalina*, 289 F.3d at at 809. Accordingly, this phrase is not a limitation.[3] *See Catalina*, 289 F.3d at 809.

### 2.   "a computer" / "said computer"

Defendants do not dispute that an indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims and that the specification discloses more than one computer. Response at 9-10. Instead, they contend that there is "no indication whatsoever that the inventor intended the steps of the claimed method be performed across multiple computers." Response at 10. All of the intrinsic evidence is to the contrary.

Most notably, Defendants admit that, "[u]nlike claim 11, however, claim 13 recites 'computers,' in the plural -- clearly indicating that the patentee intended that claim to be performed on more than one computer." Response at 11. Because claim 11 is an independent claim and claim 13 is directed to the use of more than one computer, claim 11 must necessarily encompass the use of one or more computers.

Further, the specification is replete with embodiments describing the use of multiple computers. For example, the inventor teaches that "Situation Information System relates to information communications ***between*** sources of timely information ***and*** one or more information users…Sources of situation information are databases of local information… ." Col. 4:34-36, 46-47 (emphasis added). One embodiment describes the invention as "a ***distributed system*** of information service providers which provide data about geographical features…in their

---

preamble of each issued claim, which indicates the import of the disputed phrase.   Here. the disputed phrase does not appear in any of the other fourteen (14) issued claims.
[3] Defendants also contend that LBSI has misquoted the law.  This is incorrect.  Although LBSI admits that there is a typo on page 13 where the word "named" should read "unnamed," the argument and the stated law are the same.

local area and *transmit* that data to mobile devices for display." Col. 8:33-38 (emphasis added).

Figures 1, 3, and 5 describe situation information systems that include "*global* communications

network…by way of *computer network*." Cols. 11:60-62, 14:19-21, and 17:38-42; Figures 1, 3,

and 5 (emphasis added).  Similarly, the specification explicitly describes, with reference to

Figures 13 and 14, that "the service provider selects appropriate information from the system

database (DB) … and this information is *transmitted* to the user" device and "[s]ituation

information from the service provider" is "*received*" on the user's device.  Cols. 23:49-54,

24:29-34 (emphasis added).  In this exemplary embodiment, the user's computer does not act as

the <u>source</u> of timely information and the <u>receiver</u> of that information, or the <u>distributed system</u> of

information service <u>providers</u> that transmit data to mobile devices, or comprise a <u>global</u>

<u>computer network</u> as the Defendants suggest. Plaintiff's construction of "one or more

computers" and "at least one of the one or more computers" is directly aligned with the intrinsic

evidence and black-letter patent law interpreting "a" to mean "one or more," and should,

therefore, be adopted.

   **3.  "mappable hypertext items"**

   "Mappable hypertext items" are displayed in "relation to other such items of geographical

features" or "in a manner which shows each item in a measurably appropriate relation to other

such items." Cols. 21:55-22:4 and 21:62-67.  Defendants do not dispute this.  Response at 12.

Instead, Defendants contend that "mappable" requires that the items be displayed "in a map,"

and that LBSI reads out the term "mappable."  *Id.*  First, LBSI's proposed construction includes

that a hypertext item is displayable "in a spatial relationship to another item" which is the

meaning of "mappable" that is consistent with the intrinsic evidence.  Second, "mappable" does

not require display "in a map."  The specification expressly refers to the display of hypertext

items in maps as an exemplary use of the invention.  Col. 9, ll. 6 - 7 ("a system for providing

situation information, *such as* area maps") (emphasis added).  Finally, Claim 11 recites,

"displaying…said items on said computer," which is not limited to displaying the items, "in a

map," as Defendants assert.  Col. 31:17-21, 36.  Defendants' proposed construction requiring

that the hypertext items are displayed "in the map" violates well-established principles of claim

construction law by limiting the claims to the described embodiments.

### 4.  "timely situation information"

Defendants argue that "situation information" must be limited to information about a

specific place <u>and</u> information about an event or a situation occurring or about to occur at that

place must be provided.  Response at 2, 14.  This is a gross mischaracterization of the invention.

"Situation information" is not a term of art, and should therefore be interpreted based on

the intrinsic evidence.  The specification defines "situation information" -- "[b]roadly stated,

situation information pertains to information about events <u>**or**</u> conditions associated with

places…" Col. 4:37-39 (emphasis added).[4]  There cannot be any dispute that Plaintiff's proposed

construction comports with this definition and the examples of situation information provided in

the specification.  *See, e.g.*, "detailed maps," Col. 8:59, "street named on a map," Col. 13:42, and

"map details such as highway outlines…and highway name," Col. 19:39-40.  Defendants, on the

other hand, fail to include part of the express definition in the specification (that "situation

information" is about "places") and, for non-infringement reasons, select language describing an

embodiment to improperly limit the claim.

With respect to the meaning "timely," Defendants propose "up-to-date" which does not

appear significantly different from Plaintiff's proposal of "current."  However, Defendants spend

---

[4] This is exactly the same support Defendants use for their proposed construction except with the inappropriate omission of the term "places."

pages of their brief attempting to equate "up-to-date" with "time-critical" (Response at 15-16), which are distinctly different interpretations.  Defendants' arguments regarding the requirement that information be provided in a timely manner is not relevant to the construction of "timely situation information."  As taught by the specification, "timely" should be construed as "current."  *See, e.g.,* Col. 10:33, 13:50, 19:46, 26:53, and Abstract.

### 5.  "displaying"

Defendants contend that the term "displaying" requires no construction because LBSI has not shown "a material dispute regarding the scope of the claim term."  Response at 18.  Defendants, however, fail to provide any explanation as to why LBSI's proposed construction is incorrect.  *Id.*  LBSI's proposed construction is similar to that adopted in other cases.  For example,[5] in *Kenexa Brassring Inc. v. Taleo Corp.*, No. 07-521-SLR, 2009 U.S. Dist. LEXIS 12002 (D. Del. Nov. 18, 2010), the court construed "displaying a structured form comprised of multiple fields" as "<u>causing</u> a structured form comprised of multiple fields <u>to appear.</u>" (Emphasis added).  In that case, in order to make a divided infringement argument, the defendants alleged that the users who own and control the display devices render the structured forms and that the defendants had no control over the users.  *Id.* at 750-51.  In rejecting the defendants' position, the court reasoned that "[o]wnership of the display device is irrelevant to the patented invention" and that the "software program itself…tells the display device what to render."  *Id.* at 750.

Here, Defendants are trying to hide behind a construction of "plain and ordinary meaning" to preserve a theory of divided infringement.  LBSI's proposed construction, which is

---

[5] *See also, e.g.*, *Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.*, 326 F. Supp. 2d 1060 (C.D. Cal. 2003) (construing "visually displaying" as "making something viewable on a display device"); *Muniauction, Inc. v. Thomson Corp.*, 2006 U.S. Dist. LEXIS 57461 (W.D. Pa. Aug. 15, 2006) (construing "displaying, on said issuer's computer display, information…" as "showing information…on the issuer's computer display").

consistent with the intrinsic evidence, should be adopted to preclude the Defendants from

wasting the Court's and the parties' resources with a baseless divided infringement argument.

Accordingly, for the reasons previously explained, the correct construction is "causing to

appear."

**B.     CLAIM 11 IS SUFFICIENTLY DEFINITE**

Defendants argue that the entire phrase "displaying selectably scalably said items…",

which constitutes step (c) of Claim 11 is indefinite; nevertheless, for key terms in this phrase

they either argue that no construction is necessary or propose specific constructions.  *See*

Response at 9 ("a computer/said computer"), 11 ("mappable hypertext items"), 12 ("timely

situation information"), 17 ("displaying"), and 18 ("optionally executably selected by said user

to provide additional of said situation information"). However, by either asserting that no

construction is necessary or proposing constructions for key terms in "displaying selectably

scalaby said items…," Defendants have demonstrated that this phrase is amenable to

construction, and therefore, not indefinite.  *See Mannatech, Inc. v. Glycobiotics International,*

*Inc.*, No. 3:06-cv-00471-BD, 2007 LEXIS 91946, n. 4 (N.D. Tex. Dec. 14, 2007); *see also*

*Bancorp Services, L.L.C. v. Hartford Life Insurance Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 2004)

("[I]f the claim is subject to construction, *i.e.*, it is not insolubly ambiguous, it is not invalid for

indefiniteness.").

Additionally, Defendants' arguments regarding the term "quickly" are misplaced.  The

term "quickly" modifies receiving of timely situation information and mappable hypertext items.

Col. 31:38 ("whereby user may quickly receive and display timely situation information"); Col.

31:41 ("in which said mappable hypertext items are quickly received").  In their argument for

"timely situation information," Defendants assert that the specification is crystal clear that the

"[situation] information" cannot be provided "in an untimely manner."  Response at 16-17.

Defendants' arguments for construction of the term "timely" flies in the face of their arguments

that the term "quickly" cannot be construed.  In fact, other courts have included the term

"quickly" in constructions of claim terms.  *See, e.g., Geomas Ltd. v. Idearc Media Services-West,*

*Inc.*, 2008 U.S. Dist. LEXIS 97170  *18-19 (including "quickly" in a construction of

"database").

　"Exact precision is not required to avoid invalidity on grounds of indefiniteness.  Rather,

the claim language need only be as accurate as the subject matter permits."  *Mannatech*, 2007

U.S. Dist. LEXIS 91946, at *18 (*citing Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d

1565, 1576 (Fed. Cir. 1986)); *see also Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d

1367, 1385 (Fed. Cir. 1986), *cert. denied*, 480 U.S. 947 (1987).

In this case the exact rate at which information is received will vary depending on the

type of connection used and is not relevant to understanding Claim 11.  The proper inquiry is

"whether those skilled in the art would understand what is claimed when the claim is read in

light of the specification."  *Morton International, Inc. v. Cardinal Chemical Co.*, 5 F.3d 1464,

1470 (Fed. Cir. 1993).  As Defendants readily point out (Response at 16-17), the specification

teaches that the speed at which information is provided be based on the corresponding

application of the invention.  *See, e.g.*, Col. 6:43-46 (as visitors approach their hotel, the system

provides them a map display with "increasing detail, ultimately positioning them at the hotel's

entrance"); Col. 8:9-19 (traffic congestion and emergency-situation information is provided to

drivers in real-time, allowing them to avoid traffic situations that lay in their path); *See also* Col.

6:35-38; Cols. 7:33-36, 9:20-22.  "A claim is not 'indefinite' simply because it is hard to

understand when viewed without the benefit of the specification."  *S3 Inc. v. nVIDIA Corp.*, 259

F.3d 1364, 1369 (Fed. Cir. 2001).  The foregoing passages provide more than sufficient guidance to those skilled in the art such that "quickly" within the context of Claim 11 in light of the specification is not indefinite.

For the foregoing reasons, the Court should construe the disputed claim terms as proposed by Plaintiff LBSI.

Dated:  January 30, 2012                    Respectfully submitted,

                                            **BUETHER JOE & CARPENTER, LLC**


                                     By:    */s/ Brian A. Carpenter*
                                            Christopher M. Joe *(Lead Counsel)*
                                            State Bar No. 00787770
                                            Chris.Joe@BJCIPLaw.com
                                            Eric W. Buether
                                            State Bar No. 03316880
                                            Eric.Buether@BJCIPLaw.com
                                            Brian A. Carpenter
                                            State Bar No. 03840600
                                            Brian.Carpenter@BJCIPLaw.com
                                            Niky Bukovcan
                                            WA State Bar No. 39403
                                            Niky.Bukovcan@BJCIPLaw.com

                                            1700 Pacific Avenue
                                            Suite 2390
                                            Dallas, Texas 75201
                                            Telephone:     (214) 466-1273
                                            Facsimile:     (214) 635-1829

                                            **ATTORNEYS FOR PLAINTIFF**
                                            **LBS INNOVATIONS, LLC**


                         **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that all counsel of record who are deemed to have
consented to electronic service are being served with a copy of this document via the Court's
CM/ECF system per Local Rule CV-5(a) on this 30th day of January 2012. Any other counsel of
record will be served by facsimile transmission and first class mail.


                                     */s/ Brian A. Carpenter*
                                     Brian A. Carpenter