IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |  |
|---|---|---|
| LBS INNOVATIONS LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:11-CV-142 |
| AARON BROTHERS, INC., et al., | § § | |
| Defendants. | § § § § | |

## CLAIM CONSTRUCTION ORDER

Before the Court is Plaintiff's Opening Claim Construction Brief.  Dkt. No. 172.  Also

before the Court are Defendants' response and Plaintiff's reply.  Dkt. Nos. 178 & 184.  Further

before the Court is the parties' Joint Claim Construction P.R. 4-5(d) Chart.  Dkt. No. 186 at

Ex. A.

The Court held a claim construction hearing on February 9, 2012.  *See* 2/9/2012 Minute

Entry, Dkt. No. 190.  Having considered the briefing, oral arguments of counsel, and all relevant

papers and pleadings, the Court construes the disputed claim terms as set forth herein.

1

TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . **3**

II. LEGAL PRINCIPLES OF CLAIM CONSTRUCTION . . . **4**

III. DISCUSSION . . . . . . . . . . **6**

    A. "including making apparent to the aural and tactile senses of the user" . 6

    B. "a computer" and "said computer" . . . . . . . 10

    C. "mappable hypertext item" . . . . . . . 14

    D. "timely situation information" . . . . . . . 14

    E. "displaying" . . . . . . . . . 19

    F. "optionally executably selected by said user to provide additional of said
       situation information" . . . . . . . . 21

    G. Indefiniteness . . . . . . . . . 24

IV. CONCLUSION . . . . . . . . . **34**

# I.  BACKGROUND

Plaintiff asserts United States Patent No. 6,091,956 ("the '956 Patent"), titled "Situation Information System," which relates to "a wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations."  '956 Patent at Abstract.  According to Defendants, Plaintiff is attempting to accuse "basic store locator functions," presumably on Defendants' web sites.  Dkt. No. 178 at 1. Jury Selection has been previously set for October 2, 2012.  *See* 7/20/2011 Docket Control Order, Dkt. No. 120.

The Abstract of the '956 Patent states:

> A wireless system for providing services and time-critical information about places and events to mobile computers and their users proximate to their current locations or potential destinations within enclosed areas, urban landscapes, and open areas, including travel distances and transit times, entertainment, merchants' messages, area attractions, communications, current locations of system users, and traffic congestion information and user-generated information from bar-coded objects and digital photographs of scenes and other materials.  Included is a combination low-radiation dosage-reception handset for wireless communications which includes bar-code reader and digital camera peripheral devices for mobile computers, a bracket for interfacing a mobile computer with radio to external systems, and methods for improving the operations of computer reception, search, and display of such information for the edification, efficiency, and enjoyment of computer users.

Plaintiff alleges infringement of only one claim, Claim 11, which recites (with disputed terms italicized):

> 11. A method of communicatively executing, *including making apparent to the aural and tactile senses of the user*, one or more transmittable *mappable hypertext items* representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on *a computer* in a manner scalably representing interrelationships of said objects, comprising the steps of:

3

a. searching each of one or more unique mappable information code sequences, each of which said code sequences serving to uniquely represent one of said items and copied from the memory of *said computer* or received from an alternate source, for a field containing geographical coordinates, said each of said code sequences includes an item reference field, a name field, a location field including said geographical coordinates, and a data field,

b. converting said coordinates to an appropriately proportionate representation on *said computer*, and

c. *displaying* selectably scalably said items on *said computer* whereby said user may quickly receive and display *timely situation information* mapped in the context of spatial information, including appropriate to a geographical or other area, in which said *mappable hypertext items* are quickly received, mapped, and *optionally executably selected by said user to provide additional of said situation information* or received, stored, and transmitted by a provider of said situation information.

## II.  LEGAL PRINCIPLES

A determination of patent infringement involves two steps: first, the patent claims are construed, and, second, the claims are compared to the allegedly infringing device.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc).  Claim construction is a legal question for the courts.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996). The legal principles of claim construction were reexamined by the Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).  The Federal Circuit in *Phillips* expressly reaffirmed the principles of claim construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004).

The *Phillips* court also reaffirmed that "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and

whether the inventor limited the invention in the course of prosecution, making the claim scope

narrower than it would otherwise be."  415 F.3d at 1317 (citing *Vitronics*, 90 F.3d at 1582-83).

The prosecution history is a significant source for "evidence of how the PTO [(United States

Patent and Trademark Office)] and the inventor understood the patent."  *Id.*  The prosecution

history is thus probative of the proper claim interpretation and may also contain a disclaimer of

claim scope in some cases:

> [A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well."  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).  Moreover, regardless of whether the examiner agreed with [the patentee's] arguments . . ., its statements still inform the proper construction of the term.  *See Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1374 (Fed. Cir. 2005) ("An applicant's argument made during prosecution may lead to a disavowal of claim scope even if the Examiner did not rely on the argument."); *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation.").

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011).

"[F]or prosecution disclaimer to attach, our precedent requires that the alleged

disavowing actions or statements made during prosecution be both clear and unmistakable."

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003); *accord Lazare*

*Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1370 (Fed. Cir. 2010).  The Federal

Circuit has "declined to apply the doctrine of prosecution disclaimer where the alleged disavowal

of claim scope is ambiguous."  *Omega Eng'g*, 334 F.3d at 1324.

The Court construes the disputed terms in accordance with the doctrines of claim

construction it has outlined here along with those it has enunciated in the past.  *See Pioneer*

*Corp. v. Samsung SDI Co.*, No. 2:07-CV-170, 2008 WL 4831319, at *1-*5 (E.D. Tex. Mar. 10, 2008).

## III.  DISCUSSION

Prior to claim construction briefing, the parties agreed that the term "selectably scalably" means "capable of being chosen for adjustment in size or detail."  Dkt. Nos. 172 at 7 & 178 at 4.

On the morning of the February 9, 2012 hearing, the Court provided the parties with its preliminary constructions for the disputed terms.  *See* Dkt. No. 190 at Ex.  The Court then allowed the parties to meet and confer prior to the start of oral argument.  Although one side or the other agreed to some of the Court's preliminary constructions, the parties did not reach agreement on any of the disputed terms.

## A.  "including making apparent to the aural and tactile senses of the user"

### (1)  The Parties' Positions

Plaintiff proposes that this term, which appears only in the preamble, is not a limitation. Dkt. No. 172 at 8.  Defendants propose that this term is a limitation and that it means "conveying to the user through aural and tactile outputs."  Dkt. No. 178 at 4.

Plaintiff argues that the only limitations in the preamble of Claim 11 are "the antecedent references 'one or more transmittable mappable hypertext items' and 'a computer.'"  Dkt. No. 172 at 10.  Plaintiff therefore urges that only these portions of the preamble are limiting.  *Id.* Plaintiff concludes that the disputed term is not a limitation because it is not the antecedent basis for anything recited in the body of the claim.  *Id.*  Plaintiff submits that the disputed term "merely describes a potential use of the invention" and "could be deleted from the claim without having any effect on the claimed method."  *Id.*  Plaintiff also submits that the written description refers

6

to providing "tactile and aural" information as "an example of one manner of performing the method claimed." *Id.* at 13.

Plaintiff also cites the prosecution history, noting that Claim 11 issued from original application claim 17, which depended from original application claim 16. *Id.* at 12. Neither of those original claims contain "making apparent to the aural and tactile senses of the user." *Id.* The Examiner found Claim 17 would be allowable if rewritten in independent form "including all of the limitations of the base claim and any intervening claim." Dkt. No. 172, Ex. C at LBSI000141. Plaintiff concludes that the disputed term "was not added in response to any rejection by the Examiner or to distinguish the claim from any alleged prior art." Dkt. No. 172 at 12.

Defendants respond that the specification reflects that "the inventor was focused on developing a system that, unlike the prior art, communicates to more than just the user's visual sense, and, at least, includes aural and tactile communications." Dkt. No. 178 at 6. Defendants urge that the invention is to be used in a vehicle and so "[i]t is therefore essential that the communication to the user be such that it attracts the user's attention immediately and while the information is still proximate and timely to the user. This necessarily requires communication to the user through aural/auditory means, not just visually." *Id.* Defendants also note the disclosure that physically impaired users may require "verbally conveyed information or, for example, . . . a tactile surface." *Id.* Defendants conclude that "[h]ere, the disputed phrase does not describe merely the intended use of the invention, but rather an essential component of the claimed communications method . . ., so that component must be limiting." *Id.* at 7.

7

Defendants disagree with Plaintiff's characterization of the prosecution history. *Id.* at 8. Defendants submit that Claim 11 was not just a rewrite of original application claims 16 and 17 because original claim 16 was a "method for <u>displaying</u>" whereas Claim 11 recites a "method for <u>communicatively executing</u>." *Id.* Defendants urge that "[t]he fact that the revised claim was allowed does not establish that the added language was unnecessary to patentability of the claimed invention. *Id.* Finally, Defendants note that the Examiner's Notice of Allowability cited the language that is here at issue. *Id.*

Plaintiff replies that "there was absolutely no reliance on the preamble during prosecution to distinguish the invention over prior art." Dkt. No. 184 at 2.

At the February 9, 2012 hearing, the Court provided the parties with its preliminary construction of this term as: "This term is not a limitation of the claim." Dkt. No. 190 at Ex. Plaintiff was agreeable to this construction, but Defendants were not. The parties presented oral argument reiterating the arguments presented in their briefing. In particular, Defendants urged that the inventor characterized the prior art in the written description and then, in both the written description and the prosecution history, distinguished his invention as catching the user's attention by using some combination of two or more senses, such as sight, sound, and touch. Defendant argues that if the disputed term was insignificant and not a limitation, the inventor would not have added it to the claim when rewriting it in independent form.

<u>(2)  Construction</u>

In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. . . . [A] preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (citation and internal quotation marks omitted).

The preamble of Claim 11 recites:

> 11. A method of communicatively executing, including making apparent to the aural and tactile senses of the user, one or more transmittable mappable hypertext items representing people, organisms, and objects, including buildings, roads, vehicles, and signs, on a computer in a manner scalably representing interrelationships of said objects, comprising the steps of: . . . .

On its face, to "make[]" something "apparent" to the user is "a purpose or intended use for the invention." *Catalina Mktg.*, 289 F.3d at 808. In other words, it is set forth as an intended result, not as a step of the claimed method. This result is not "necessary to give life, meaning, and vitality" to the claim because the steps of the method can be performed without successfully making anything "apparent" to the user. *Id.* As to the specification, the disclosure of "verbally or tactilely conveyed" information pertains to a particular embodiment and should not be imported into the claim:

> *Certain* information device users, *such as* that of device 18b used by a physically impaired user, may require *alternatively* conveyed information, *such as* that which is verbally or tactilely conveyed from an appropriately configured device.

*See* '956 Patent at 13:17-21 (emphasis added); *see also id.* at 16:4-10. Similarly, the disclosure of the capability to present information as "tactile and aural as well as visual" pertains to "*[o]ne such* transceiver of subject invention," not necessarily *all* devices. *Id.* at 5:47-52 (emphasis added).

Defendants cite *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1306 (Fed. Cir. 1999). As noted by Plaintiff, that case involved a preamble that provided antecedent basis for a term appearing in the body of the claim. *Id. Pitney Bowes* is therefore distinguishable.

Finally, Defendants have not shown that the term at issue was the subject of any discussion by the Examiner or the patentee during prosecution.  The mention of the term at issue together with other limitations of the claim in the Notice of Allowability is not enough to rebut the general principle that the preamble is not a limitation:

> [T]he prior art of record fails to disclose . . . a method of communicatively executing, *including making apparent to aural and tactile senses of the user*, transmittable mappable hypertext items representing people and objects on a computer in a manner scalably representing interrelationships of the objects comprising the steps of searching each of the more unique mappable information code sequences, each of which serves to uniquely represent one of the items and copied from the memory of the computer, and displaying selectably scalably the items on the computer whereby the user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which the mappable hypertext items are received, mapped and selected, as required by claim [11].

Dkt. No. 178, Ex. D at LBSI000241-242.  On balance, Defendants have failed to establish a "clear and unmistakable" disclaimer of claim scope.  *Omega Eng'g,*, 334 F.3d at 1325-26; *accord Lazare Kaplan*, 628 F.3d at 1370.

The Court therefore finds that "including making apparent to the aural and tactile senses of the user" is not a limitation of Claim 11.

## B.  "a computer" and "said computer"

### (1)  The Parties' Positions

Plaintiff proposes that "a computer" means "one or more computers" and that "said computer" means "one of the one or more computers."  Dkt. No. 186, Ex. A at 1.[1]  Defendants

---

[1] Plaintiff originally proposed that this term means "at least one of the one or more computers."  Dkt. No. 172 at 14.

propose that no construction is necessary.  Dkt. No. 178 at 9.  Alternatively, Defendants propose

that these terms mean "the user's computer."  *Id.*

Plaintiff argues that "a" in "patent parlance carries the meaning of 'one or more' in open-

ended claims containing the transitional phrase 'comprising.'"  Dkt. No. 172 at 14 (quoting

*Baldwin Graphic Sys., Inc. v. Sibert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)).  Plaintiff also

notes that Claim 13, which depends from Claim 11, refers to "others of said computers," plural.

*Id.* at 15.

Defendants respond that "the [general] rule does not apply where the only correct and

reasonable interpretation of the claim limits the scope of the claim to singular."  Dkt. No. 178 at

10 (quoting *FotoMedia Techs., LLC v. AOL, LLC*, No. 2:07-CV-255, 2009 WL 2175845, at *6

(E.D. Tex. July 21, 2009)).  Defendants argue that here as in *FotoMedia*, the patent does not

disclose distributing the method steps across multiple computers but instead claims that the

same, single computer performs all of the recited steps.  Dkt. No. 178 at 10.  "By reciting 'said

computer,'" Defendants conclude, "it is clear that the same computer must perform each step."

*Id.* at 11.  Defendants further urge that "there is no indication in the specification that the

computer recited in the asserted claim is anything other than the <u>user's</u> computer."  *Id.*  As to

Plaintiff's reliance on Claim 13, Defendants respond that Claim 13 recites "computers," in the

plural, "clearly indicating that the patentee intended that claim to be performed on more than one

computer."  *Id.*

Plaintiff replies that "[b]ecause claim 11 is an independent claim and claim 13 is directed

to the use of more than one computer, claim 11 must necessarily encompass the use of one or

more computers."  Dkt. No. 184 at 5.  Plaintiff also submits that "the specification is replete with

embodiments describing the use of multiple computers." *Id.* (citing '956 Patent at 4:34-36,

4:46-47, 8:33-38, 11:60-62, 14:19-21, 17:38-42, 23:49-54, 24:29-34 & Figs. 1, 3 & 5).

At the February 9, 2012 hearing, the Court provided the parties with its preliminary

construction of "a computer" as "No construction is required" and "said computer" as "the same

computer that performs the other steps recited in the claim."  Dkt. No. 190 at Ex.  Defendants

were agreeable to this construction but Plaintiffs were not.  The parties presented no argument on

the term "a computer" but reiterated the arguments from their briefing as to "said computer."  In

particular, Plaintiff emphasized that the "Background—Field of the Invention" refers to

"distributed information systems" rather than to a single computer acting alone.  '956 Patent at

1:4-7.

(2)  Construction

Plaintiff relies on *Baldwin* and similar cases, as noted above, but the Court of Appeals for

the Federal Circuit has noted that *Baldwin* has limits:

> *Baldwin*, however, does not set a hard and fast rule that "a" always means one or
> more than one.  Instead, we read the limitation in light of the claim and
> specification to discern its meaning.  *Insituform Techs., Inc. v. Cat Contracting,
> Inc.*, 99 F.3d 1098, 1105-06 (Fed. Cir. 1996) (analyzing the "claims, specification
> and file history" to determine that "a vacuum cup" means one and only one
> vacuum cup).  When the claim language and specification indicate that "a" means
> one and only one, it is appropriate to construe it as such even in the context of an
> open-ended "comprising" claim.

*Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011).

Claim 11 recites, in relevant part (emphasis added):

11. A method of communicatively executing, including making apparent to the
aural and tactile senses of the user, one or more transmittable mappable hypertext
items representing people, organisms, and objects, including buildings, roads,

vehicles, and signs, on *a computer* in a manner scalably representing interrelationships of said objects, comprising the steps of:

> a. searching each of one or more unique mappable information code sequences . . . copied from the memory of *said computer* or received from an alternate source . . .

> b. converting said coordinates to an appropriately proportionate representation on *said computer*, and

> c. displaying selectably scalably said items on *said computer* . . . .

The recitations of "said computer" have antecedent basis in the recitation of "a computer" in the preamble. *See, e.g., Energizer Holdings Inc. v. I.T.C.*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ("The requirement of antecedent basis is a rule of patent drafting, administered during patent examination.") (citing *Manual of Patent Examining Procedure* § 2173.05(e) (8th ed. rev. 2, May 2004)). A person of ordinary skill in the art would therefore read "said computer" to refer to the same computer recited in the preamble.

On balance, *FotoMedia* is on point and is persuasive, specifically as to the finding that the inventor "did not claim a system that could distribute the steps of the claim[] at issue between various . . . computers." 2009 WL 2175845, at *6. The Court therefore finds that the steps recited by Claim 11 all refer to actions involving the same "computer." This finding expressly rejects Plaintiff's proposal. Defendants propose no construction, and no construction of "a computer" is necessary, but construction is appropriate as to "said computer" in order to clearly resolve the parties' dispute. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362-63 (Fed. Cir. 2008) (noting that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims" but must resolve "dispute(s) regarding the scope of a claim term.").

The Court construes **"said computer"** to mean **"the same computer that performs the other steps recited in the claim."**

### C.  "mappable hypertext item"

At the Claim Construction Hearing on February 9, 2012, the parties submitted their agreement that the term "mappable hypertext item" be construed to mean "text or one or more symbols, displayable on a map, that can be selected to access additional information."  The Court therefore construes the term in accordance with the parties' agreement.

### D.  "timely situation information"

#### (1)  The Parties' Positions

Plaintiff proposes this term means "current information about specific places, events, or their details."  Dkt. No. 172 at 18.  Defendants propose this term means "up-to-date information about an event or a condition occurring or about to occur."  Dkt. No. 178 at 12.

Plaintiff argues that "[t]he inventor in the specification defines the phrase 'timely situation information'" by referring to "information[] about specific places, events, and their details, called situations herein," and "information about places and their events, situation information."  Dkt. No. 172 at 19 (quoting '956 Patent at 1:35-39 & 2:57-59).

Defendants respond that "Defendants' proposed construction is taken directly from the Summary of the Invention."  Dkt. No. 178 at 13.  Defendants argue that "[t]he timeliness of such information is essential to distinguish the invention from the prior art" because the Examiner rejected the original application claim that eventually issued as Claim 11, noting that it was "very well known in the art to include a search engine which produces information locating people, events and services."  *Id.* (quoting 1/13/1999 Office Action, Dkt. No. 172, Ex. C at LBSI000138-

14

139).  Defendants argue that Plaintiff's proposal has modified the proper definition by changing

the word "and" to "or" in an attempt "to impermissibly expand claim 11 to cover a basic store

locator, which does not provide any 'timely situation information.'"  Dkt. No. 178 at 14.

Defendants conclude "[i]t would be improper to allow [Plaintiff] to broaden claim 11 to cover

what already existed in the prior art, such as the mere ability to locate or map a store or

destination."  *Id.* at 15.

As to the word "timely," Defendants argue that "[t]he claimed timely situation

information has a time-critical aspect to it that a user needs at the moment to respond to some

event or condition occurring or about to occur (*e.g.*, an on-going sale at a store, upcoming traffic,

etc . . .)."  *Id.*  Defendants submit that this context is set forth consistently and repeatedly

throughout the specification.  *Id.* at 15-16.  Defendants urge that the situations discussed in the

specification, such as shopping at a store or avoiding a traffic jam, would not be addressed "if the

user is simply provided 'current' information in an untimely manner, or if the information fails to

provide specific details about imminent events or conditions at places proximate to the user."  *Id.*

at 17.

Plaintiff replies that the written description discloses that "[b]roadly stated, situation

information pertains to information about events <u>or</u> conditions associated with places . . ."  Dkt.

No. 184 at 7 (citing '956 Patent at 4:37-39).  Plaintiff also notes that although Defendants'

proposed construction uses the phrase "up-to-date," Defendants' briefing improperly attempts to

equate that phrase with "time-critical."  *Id.* at 8.

At the February 9, 2012 hearing, the Court provided the parties with its preliminary

construction of "timely situation information" as "up-to-date information about an event or

condition occurring or about to occur at a place." Dkt. No. 190 at Ex.  Defendants were

agreeable to this construction but Plaintiffs were not.  The parties nonetheless agreed that the

constituent term "timely" does not require construction and so the word "timely" can be used in

the Court's construction instead of the phrase "up-to-date."

      Plaintiff cited various examples of locations discussed in the written description, such as

attractions (*id.* at 8:34-43), municipalities (*id.*), hotel accommodations (*id.* at 6:31-34), restaurant

offerings (*id.*), and zoo exhibits (*id.* at 6:60-67).  Plaintiff concluded that "situation information"

can refer to places without necessarily referring to events or conditions.  Defendants responded,

for example, that the discussion of "hotel accommodations" also discusses "review[ing] hotels

*having vacancies and special offers* in [the visitors'] price range," which is time-sensitive

information.  *Id.* at 6:38-40 (emphasis added).

      <u>(2)  Construction</u>

      In the "Background-General Discussion," the patentee acted as lexicographer by defining

the constituent terms "situation" and "situation information":

> While people's need for information that specifically fits their needs has increased,
> the availability, accessibility, and timeliness of this information, about specific
> places, events, and their details, *called situations herein*, have decreased.
> . . .
> Information about places and their events, *situation information*, helps people to
> function closer to their potential.
> . . .

'956 Patent at 1:35-38 & 2:57-59 (emphasis added); *Phillips*, 415 F.3d at 1316 ("[T]he

specification may reveal a special definition given to a claim term by the patentee that differs

from the meaning it would otherwise possess.  In such cases, the inventor's lexicography

governs.").

The '956 Patent thus defines "situations" and "situation information" as "information" about: (1) places; *and* (2) events associated with those places.  The "Background–Field of the Invention" provides further support by disclosing that "[t]his invention relates to distributed information systems, specifically those which exchange information about places, their events, and details with mobile computers and their users."  '956 Patent at 1:4-8.  Likewise, the Summary of the Invention discloses that "[b]roadly stated, situation information pertains to information about events or conditions associated with places which the mobile user may encounter or consider visiting."  *Id.* at 4:37-40.

Although Plaintiff cites, for example, disclosure of a device displaying "[d]ata such as mileage to various municipalities, services, and attractions" (*id.* at 8:38-39), a claim need not necessarily be read to encompass all embodiments disclosed in the specification.  *See, e.g., Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1337 (Fed. Cir. 2007) ("[A] claim need not cover all embodiments. . . . A patentee may draft different claims to cover different embodiments.").

As to Defendants' proposal, "up-to-date" appears in the first paragraph of the Summary of the Invention:

> The Situation Information System relates to information communications between sources of *timely information* and one or more information users which also provide information to other users.  Broadly stated, situation information pertains to information about events or conditions associated with places which the mobile user may encounter or consider visiting.  It particularly includes *events occurring or about to occur* in a locus accessible to the mobile user and to which the user may arbitrarily choose to respond by visiting one or more of the events, avoiding them entirely, communicating them to another person, rectifying them, or otherwise modifying plans and itineraries in light of such events.  Sources of situation information are databases of local information and information from users themselves.  Additionally, the situation information system provides users

with *up-to-date* map-tracking information relating their location to events and situations as well as *enabling them to respond in a timely manner*.

'956 Patent at 4:33-51 (emphasis added).  The reference to "Situation Information System" in all capitals, as well as the presence of this paragraph in a section titled "Summary of the Invention," weighs in favor of construing "mappable hypertext item" to comport with this disclosure.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001) (noting disclosure of coaxial configuration in the "Summary of the Invention" and finding that "the characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure").

The remainder of the written description is consistent with the Summary of the Invention.  For example, as Defendants argue, the '956 Patent contemplates that "timeliness" of information about a traffic jam or a special offer at a store requires that information be conveyed to the user while the user can still effectively act upon it.  '956 Patent at 4:42-46, 7:33-36 ("special offers"), 13:29-38 ("short-term offer of merchandise"), 16:27-31 ("current, short-term offers"), 19:33-37 ("[t]raffic congestion"), Fig. 2 ("1 hr. Special"), Fig. 4 (same) & Fig. 6 ("Road congestion"); *see Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1143-46 (Fed. Cir. 2005) (affirming construction of "board" that included only "material made from wood cut from a log" in light of "context . . . maintained throughout the written description"); *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention.") (citing *Phillips*).

18

Turning to extrinsic evidence, "up to date" can be defined as an adjective meaning "Extending to the present time; presenting or inclusive of the latest facts, details, etc.; employing or involving the latest methods or devices." *Oxford English Dictionary* (2d ed. 1989). Defendants' proposal of the phrase "up-to-date" is thus consistent with the discussing of timeliness in the above-quoted portion of the Summary of the Invention.

Nonetheless, because the parties have agreed that the constituent term "timely" does not require construction, the Court does not include the phrase "up-to-date" in its final construction. Defendants' proposal of "occurring or about to occur," however, comports with the timeliness requirement consistently disclosed throughout the '956 Patent as well as in the disputed claim term itself and should therefore be included in the Court's construction. *Nystrom*, 424 F.3d at 1143-46; *Retractable*, 653 F.3d at 1305.

The Court therefore construes the term **"timely situation information"** to mean **"timely information about an event, or a condition, occurring or about to occur at a place."**

**E.  "displaying"**

(1)  The Parties' Positions

Plaintiff proposes this term means "causing to appear."  Dkt. No. 172 at 20.  Defendants propose this term does not require construction and that "[t]he Court should . . . give this term its plain and ordinary meaning."  Dkt. No. 178 at 18.

Plaintiff argues that "[t]he claim language does not require any specific person (or category of persons), such as a user of mappable hypertext items, to do the displaying."  Dkt. No. 172 at 20.

19

Defendants respond that this is a "commonly understood word with a widely accepted meaning" and "does not have more than one ordinary meaning."  Dkt. No. 178 at 17-18.

Plaintiff replies that "Defendants are trying to hide behind a construction of 'plain and ordinary meaning' to preserve a theory of divided infringement," to wit, that "the defendants ha[ve] no control over the users."  Dkt. No. 184 at 8.  Plaintiff argues that its proposed construction is similar to the construction of similar terms in other cases.  *Id.* at 8 & n.5.

At the February 9, 2012 hearing, the Court provided the parties with its preliminary construction of "displaying" as "said computer causing to appear."  Dkt. No. 190 at Ex.  The parties did not comment on the Court's preliminary construction or present any oral argument on this term but instead submitted it on the papers.  Plaintiff did submit, however, that because the Court's preliminary construction includes the term "said computer," Plaintiff incorporates its arguments as to that term, discussed in Section III.B., above.

(2)  Construction

Defendants' opposition to Plaintiff's proposal demonstrates that the parties have a dispute, and the Court has a duty to resolve the dispute.  *O2 Micro*, 521 F.3d at 1362-63.  Defendants do not challenge the correctness of Plaintiff's proposal.  Also, the written description comports with Plaintiff's proposal by disclosing "*graphically* displaying" symbols and text "on the user's display."  '956 Patent at 21:63-64 (emphasis added).  Further, the Summary of the Invention discloses that "it is desirable that the form factor of the situation information device provide a usefully large display or graphical display unit (GDU)," and the description refers to information that "appears on display 4a" shown in Figure 2.  *Id.* at 5:48-50, 13:33 & 13:51.

20

As to the apparent dispute about who or what "do[es] the displaying" (Dkt. No. 172

at 20), the relevant limitation of Claim 11 recites (emphasis added):

> c. *displaying* selectably scalably said items *on said computer* whereby said user
> may quickly receive and display timely situation information mapped in the
> context of spatial information, including appropriate to a geographical or other
> area, in which said mappable hypertext items are quickly received, mapped, and
> *optionally executably selected by said user* to provide additional of said situation
> information or received, stored, and transmitted by a provider of said situation
> information.

On balance, the best reading of Claim 11 in light of the specification as a whole is that the

"computer" of Claim 11 does the "displaying" of the items and that the user may then "optionally

executably select[]" an item or items.

The Court therefore construes **"displaying"** to mean **"said computer causing to**

**appear."**

## F. "optionally executably selected by said user to provide additional of said situation information"

### (1) The Parties' Positions

Plaintiff proposes this term "does not require construction except for the term 'situation

information' discussed above." Dkt. No. 172 at 21.  Defendants propose this term means

"displayed in a manner that permits the user to select the item to automatically provide additional

situation information about the item."  Dkt. No. 178 at 18.

Plaintiff submits that aside from the constituent term "situation information," "[e]ach

subset of terms within this phrase ('optionally,' 'executably selected,' 'by said user,' 'to provide,'

etc.) is clear and understandable to a fact finder."  Dkt. No. 172 at 21.  Plaintiff argues that

Defendants' proposal imports limitations from a "description of one exemplary embodiment" at

21

column 22, lines 15-35, particularly as to the language "displayed in a manner" and "automatically." *Id.* at 22.  Plaintiff also argues that Defendants' reliance on Claims 12 and 13, which depend from Claim 11, "violate[s] the doctrine of claim differentiation as Claim 11 is presumed to be broader than its dependent claims." *Id.*  Plaintiff further submits that there was no relevant disclaimer during prosecution. *Id.* at 22-23.

Defendants respond that this term requires construction because "[a] juror cannot be expected to, for example, understand the meaning of 'executably selected' without guidance." Dkt. No. 178 at 18.  Defendants submit that the specification discloses only a "single embodiment discussing this limitation" with reference to Figures 11 and 12, and "[e]very discussion of 'mappable hypertext items' points to the discussion on Figure 12 as the single definitive description of how such items may be executably selected to provide additional information." *Id.* at 19 & 20.  As to Claims 12 and 13, Defendants submit that "[b]oth dependent claims are helpful in illustrating the manner in which mappable hypertext items are displayed to be selected and to automatically provide relevant information." *Id.* at 21.

Plaintiff presents no reply argument on this term.  *See* Dkt. No. 184.

At the February 9, 2012 hearing, the Court provided the parties with its preliminary construction of this term as "displayed in a manner that permits the user to select the item so as to provide additional situation information about the item."  Dkt. No. 190 at Ex.  The parties did not comment on the Court's preliminary construction or present any oral argument on this term but instead submitted it on the papers.

(2)  Construction

Although Plaintiff argues that this term should not be construed, Defendants' proposed construction demonstrates that the parties have a "fundamental dispute regarding the scope of a claim term," so the Court has a duty to resolve the dispute.  *O2 Micro*, 521 F.3d at 1362-63.

The claim limitation at issue recites (emphasis added):

c. displaying selectably scalably said items on said computer whereby said user may quickly receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, in which *said mappable hypertext items are* quickly received, mapped, and *optionally executably selected by said user to provide additional of said situation information* or received, stored, and transmitted by a provider of said situation information.

Defendants' proposal of the language "displayed in a manner" is consistent with the language of this limitation, which involves items displayed on the recited computer.  Also, "mappable hypertext items" are graphical in nature (*see* '956 Patent at 21:35-37), so they are "displayed," as Defendants propose.

Claim 11 does not recite "automatically."  On balance, Defendants' proposal of the language "to automatically provide" is based on an exemplary embodiment that should not be imported into the claim:

Element data type 29d provides information as to . . . whether [the item] is to be included in the map displayed on user's computer, and, if displayed, whether the item's symbol . . . or the item name can be subsequently selected by a user to *automatically provide additional information* about the item, *such as* by enlarging the detail, called zooming in, or, *for example*, as hypertext, in which the item name or symbol can be selected or clicked on by a user to provide additional information.

'956 Patent at 22:15-30 (emphasis added).

The Court therefore construes **"optionally executably selected by said user to provide additional of said situation information"** to mean **"displayed in a manner that permits the user to select the item so as to provide additional situation information about the item."**

## G.  Indefiniteness

Defendants argue that Claim 11 is invalid because element "c" thereof is indefinite.  Dkt. No. 178 at 21.  Plaintiff responds that Claim 11 is not indefinite because this term is "amenable to construction."  Dkt. No. 184 at 9.

Element "c" of Claim 11 recites (emphasis added):

c. displaying selectably scalably said items on said computer whereby said user may *quickly* receive and display timely situation information mapped in the context of spatial information, including appropriate to a geographical or other area, *in which* said mappable hypertext items are *quickly* received, mapped, and optionally executably selected by said user to provide additional of said situation information *or received, stored, and transmitted by a provider of said situation information*.

Defendants argue this element "contains various ambiguities, including the following":

(1) how quick is "quickly"?

(2) does the first "quickly" mean that the user must quickly receive and quickly display timely situation information, or only quickly receive the information?

(3) does the second "quickly" mean that the items are (a) quickly received alone; (b) quickly received, quickly mapped, and quickly optionally executably selected; or (c) all of the above and quickly "received, stored and transmitted"?

(4) is "or received, stored, and transmitted" an alternative to "quickly received, mapped, and optionally executably selected" or simply an alternative to "optionally executably selected by said user"?

(5) does the "provider of such situation information" need to receive, store and transmit the information, or only transmit the information?

24

(6) does "in which said mappable hypertext items" mean the items are received, etc. in the computer or received, etc. while the user is in the "geographical or other area"?

Dkt. No. 178 at 22.  Defendants rely mainly on *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (finding that "the definition of 'aesthetically pleasing' cannot depend on an undefined standard" and noting that "one skilled in the art reading the specification is left with the unhelpful direction to consult the subjective opinions of aesthetic design specialists, database specialists, and academic studies").

At the February 9, 2012 hearing, the Court provided the parties with its preliminary construction of this term as:

This limitation is not indefinite.  This limitation means:

> displaying selectably scalably said items on said computer,
>
> whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and
>
> whereby said mappable hypertext items are, quickly, either: (1) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or (2) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information.

Dkt. No. 190 at Ex.  The parties did not comment on the Court's preliminary construction and instead only presented oral argument on whether the constituent term "quickly" is subjective and thereby renders the claim indefinite.

Indefiniteness is a "legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371,

1376 (Fed. Cir. 2001) (citation omitted).  A finding of indefiniteness must overcome the statutory

presumption of validity.  *See* 35 U.S.C. § 282.  That is, the "standard [for finding indefiniteness]

is met where an accused infringer shows by clear and convincing evidence that a skilled artisan

could not discern the boundaries of the claim based on the claim language, the specification, and

the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy*

*Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

> In determining whether that standard is met, i.e., whether the claims at issue are sufficiently precise to permit a potential competitor to determine whether or not he is infringing, we have not held that a claim is indefinite merely because it poses a difficult issue of claim construction.  We engage in claim construction every day, and cases frequently present close questions of claim construction on which expert witnesses, trial courts, and even the judges of this court may disagree.  Under a broad concept of indefiniteness, all but the clearest claim construction issues could be regarded as giving rise to invalidating indefiniteness in the claims at issue.  But we have not adopted that approach to the law of indefiniteness.  We have not insisted that claims be plain on their face in order to avoid condemnation for indefiniteness; rather, what we have asked is that the claims be amenable to construction, however difficult that task may be.  If a claim is insolubly ambiguous, and no narrowing construction can properly be adopted, we have held the claim indefinite.  If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds. . . . By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity . . . and we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.

*Exxon*, 265 F.3d at 1375 (citations and internal quotation marks omitted).

<u>(1)  How quick is "quickly"?</u>

"When a word of degree is used," such as "quickly" in Claim 11, the Court "must

determine whether the patent's specification provides some standard for measuring that degree."

*Datamize*, 417 F.3d at 1351 (Fed. Cir. 2005) (quoting *Seattle Box Co. v. Indus. Crating &*

*Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984)).

Defendants argue that "the specification fails to provide any objective standard for

determining whether information or elements are received 'quickly.'" Dkt. No. 178 at 24.

Plaintiff replies that the limitation at issue is amenable to construction and that "[t]he

term 'quickly' modifies receiving of timely situation information and mappable hypertext items."

Dkt. No. 184 at 9.  Plaintiff argues that "Defendants' arguments for construction of the term

'timely,'" including that "'situation information' cannot be provided 'in an untimely manner,'"

"fl[y] in the face of their arguments that the term 'quickly' cannot be construed." Dkt. No. 184 at

10.  Plaintiff notes that this Court has included the term "quickly" in a claim construction in

another case.  *Id.* at 10 (citing *Geomas Ltd. v. Idearc Media Services-West, Inc.*, No. 2:06-CV-

475, 2008 WL 4966933, at *6 (E.D. Tex. Nov. 20, 2008) (Everingham, J.) (construing

"database" to mean "a collection of information or data organized such that a computer program

can quickly retrieve selected information or data").  Plaintiff urges that "the exact rate at which

information is received will vary depending on the type of connection used and is not relevant to

understanding Claim 11."  *Id.* at 10.  Plaintiff submits that "the specification teaches that the

speed at which information is provided be based [sic] on the corresponding application of the

invention."  *Id.* (citing '956 Patent at 6:35-38, 6:43-46, 7:33-36, 8:9-19 & 9:20-22).

At the February 9, 2012 hearing, Defendants emphasized *Datamize* and *Halliburton*, cited

above, and asked, "How quick is quickly?" and "Is there some objective way of construing

quickly?"  Defendants urged that adopting Plaintiff's position would provide accused infringers

with no objective criteria for evaluating whether a step has been performed "quickly."

Defendants also cited *Crane Co. v. Sandenvendo America, Inc.*, No. 2:07-CV-42, 2009 WL 1586704, at *13 (E.D. Tex. June 5, 2009) (Everingham, J.), which found that in a claim directed to a vending machine, the term "rapidly" (in the phrase to "rapidly and smoothly remove and carry a selected said product") was "not amenable to construction" because "[t]he term is entirely subjective and is judged purely from the consumer's standpoint."

Plaintiff responded that "quickly" is an objective fact that can be judged by a finder of fact in the context of the application of the invention.  To support this proposition, Plaintiff cited *Good Sportsman Marketing LLC v. Testa Associates, LLC*, 440 F. Supp. 2d 570, 577 (E.D. Tex. 2006) (Davis, J.), which found that the phrase "in rapid succession" in the Court's construction was not "a term of art requiring explanation for the jury" but instead was "a phrase potential jurors will be familiar with."

At first blush, the recitation of "quickly" in Claim 11 resembles the phrase "aesthetically pleasing" found indefinite in *Datamize*.  417 F.3d at 1349 ("Merely understanding that 'aesthetically pleasing' relates to the look and feel of interface screens, or more specifically to the aggregate layout of elements on interface screens, fails to provide one of ordinary skill in the art with any way to determine whether an interface screen is 'aesthetically pleasing.'").

Here, although the term "quickly" "include[s] a subjective element," its scope does not "depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention."  *Id.* at 1351.  Instead, the use of "quickly" must be read in the context discussed as to the term "timely situation information" in Section III.D., above, regarding the user being able to take advantage of the information, such as while the user is still proximate to a relevant location or has not yet reached the location.  *See* '956 Patent at Abstract ("providing . . .

time-critical information about places and events to mobile computers and their users proximate to their current locations or potential destinations"), 6:35-38 ("electronic map would show traffic congestion forming in their path and they may choose to take a more immediate exit in order to avoid congestion"), 7:33-36 ("knowing a person's location, the networked store could increase customer traffic by transmitting special offers directly to the willing customer's device"), 8:9-19 ("traffic congestion and emergency-situation information can be provided to approaching motorists and distant emergency decision makers"), 13:8-13 ("The second mode of subject invention's operation . . . occurs in which the location of the mobile situation information device . . . is correlated with proximate information to be transmitted.") & 28:59-63 ("The situation information system has been described with reference to exemplary and preferred embodiments which the reader can see provide a high degree of accessible usefulness which will provide users with better, specifically timely and proximate, information.").

This context provided by the written description and the constituent term "timely situation information" enables a finder of fact to objectively evaluate the constituent term "quickly."  Thus, on balance, *Good Sportsman*, 440 F. Supp. 2d 570, is more persuasive and more applicable to the above-captioned case than is *Crane*, 2009 WL 1586704, so the constituent term "quickly" does *not* render Claim 11 indefinite.  *See also Invitrogen Corp. v. Biocrest Mfg., LP*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.") (citation and internal quotation marks omitted); *Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1367 (Fed. Cir. 2010) ("Not all terms of degree are indefinite.  However, the specification must "provide[ ] some standard for measuring that degree.") (quoting *Datamize*, 417 F.3d at 1351).

29

(2)  Does the first "quickly" mean that the user must quickly receive and quickly display timely situation information, or only quickly receive the information?

Defendants argue that "neither the claim language nor the specification provides guidance" on what the first use of "quickly" modifies because the specification discloses both quickly receiving and quickly displaying.  Dkt. No. 178 at 26.

On balance, the best reading of the disputed term is that the first use of "quickly" modifies the aggregate of both "receive" and "display."  This is not necessarily equivalent to "quickly receive" and "quickly display" because, as taught by the context of the claim and the specification, what matters is whether the set of operations, as a whole, is done quickly.  In other words, for example, if the "display" aspect is not done "quickly," the "receive" and "display" operations, in the aggregate, might nonetheless be done "quickly."

(3)  Does the second "quickly" mean that the items are (a) quickly received alone; (b) quickly received, quickly mapped, and quickly optionally executably selected; or (c) all of the above and quickly "received, stored and transmitted"?

Defendants argue that "[t]he specification exacerbates the ambiguity, as any of the aforementioned alternatives are reasonable in light of the described system where information is 'quickly' transmitted between mobile devices and service providers, and 'rapidly' displayed on maps on the devices."  Dkt. No. 178 at 27.

On balance, for the same reasons discussed in Section III.G.(2), above, the best reading of the disputed term is that the second use of "quickly" modifies: (1) the aggregate of "received," "mapped," and "optionally executably selected," and (2) the aggregate of "received, stored, and transmitted by a provider of said situation information."

(4)  Is "or received, stored, and transmitted" an alternative to "quickly received, mapped, and optionally executably selected" or simply an alternative to "optionally executably selected by said user"?

Defendants argue that "[t]he patent specification does not resolve this ambiguity, but instead exacerbates it by supporting both constructions."  Dkt. No. 178 at 27.  Defendants further submit that "[t]he prosecution history is similarly unavailing, with the Examiner's statement of reasons for allowance ignoring the term altogether."  *Id.* at 28.

On balance, the best reading of the disputed term is that "or received, stored, and transmitted" is an alternative to "received, mapped, and optionally executably selected."

(5)  Does the "provider of such situation information" need to receive, store and transmit the information, or only transmit the information?

Defendants argue that "[t]he specification again exacerbates this ambiguity by providing support for either of the alternative constructions."  Dkt. No. 178 at 29.

On balance, the best reading of the disputed term is that all three of "received, stored, and transmitted" are done "by a provider of said situation information."

(6)  Does "in which said mappable hypertext items" mean the items are received, etc. in the computer or received, etc. while the user is in the "geographical or other area"?

Defendants argue:

The phrase "in which said mappable hypertext items …" (referred to herein as "the 'in which' phrase") is ambiguous.  The "in which" phrase could modify either: (a) "said computer" or (b) "context of spatial information," as is indicated in quoted claim element c below:

c. displaying selectably scalably said items on [(a)] said computer whereby said user may quickly receive and display timely situation information mapped in the [(b)] context of spatial information, including appropriate to a geographical or other area, in which said mappable hypertext items are quickly received, mapped, and

31

> optionally executably selected by said user to provide additional of
> said situation information or received, stored, and transmitted by a
> provider of said situation information.

> If the "in which" phrase modifies (a) "said computer," then the claim could be
> construed as requiring that "said computer" is the object where "mappable
> hypertext items" are "received, mapped, and optionally executably selected . . . ."
> If, however, the phrase modifies (b) "context of spatial information," then the
> claim could be construed as requiring the actions that follow "in which" occur
> when the user (or the user's computer) is in that area (geographical or other)
> defined by the spatial information. In particular, this latter construction would
> require the "mappable hypertext items" be "received, mapped, and optionally
> executably selected . . ." when the user (or the user's computer) is physically in a
> particular geographical area.

Dkt. No. 178 at 29.  Defendants argue that "[a]gain, resorting to the specification fails to resolve

this ambiguity" because both interpretations are supported.  *Id.* at 30.

On balance, the best reading of the "in which" phrase is that, much like the "whereby"

clause that precedes it, the "in which" phrase modifies "displaying selectably scalably said items

on said computer."

(7)  "Additional Syntactical Ambiguities"

Defendants also include a footnote setting forth additional purported ambiguities:

> Claim 11 contains additional syntactical ambiguities, including: 1) it is unclear
> what "including appropriate to a geographical or other area" modifies; 2) it is
> unclear what "other area" means (as distinct from a geographical area); 3) it is
> unclear what the antecedent basis is for the last "said situation information" that
> appears in the element; 4) it is unclear what "mapped in the context of spatial
> information" modifies; and 5) it is unclear what "by said user" modifies.  Given
> the page limits, defendants focus on the most glaring ambiguities.

Dkt. No. 178 at 22 n.3.  The Court expressly resolves these issues as follows:

First, "including appropriate to a geographical or other area" modifies "spatial

information."

Second, the '956 Patent appears to use the word "geographic" to mean something less than everything that could be mapped:

> In yet another embodiment of subject invention is a distributed system of information service providers which provide data about *geographical features*, services, and attractions in their local area and transmit that data to mobile devices for display.

'956 Patent at 8:34-38 (emphasis added).  A person of ordinary skill in the art would probably not read "geographical" in this passage to modify "services" and "attractions."  But regardless, the phrase "geographical or other area" refers to any area, and Defendants have not argued that this reference to an "area" somehow renders the claim indefinite.

Third, Defendants have not explained why the last recitation of "said situation information" would have an antecedent basis any different than the preceding recitation of "said situation information."  Defendants having not articulated any argument, the Court declines to speculate on what Defendants might have argued.

Fourth, "mapped in the context of spatial information" modifies "timely situation information."

Fifth, "by said user" modifies "optionally executably selected."

<u>(8)  Construction</u>

Combining all of the findings in this subsection (without incorporating the constructions of constituent terms), the Court hereby construes limitation "c" of Claim 11 to mean:

33

displaying selectably scalably said items on said computer,

> whereby said user may, quickly, receive and display timely situation information mapped in the context of spatial information, including spatial information appropriate to a geographical or other area, and

> whereby said mappable hypertext items are, quickly, either: (1) received, mapped, and optionally executably selected by said user to provide additional of said situation information; or (2) received by a provider of said situation information, stored by a provider of said situation information, and transmitted by a provider of said situation information.

Because the limitation is thus "amenable to construction," Defendants have *not* met their burden to establish by "clear and convincing evidence" that Claim 11 is invalid as indefinite. *Exxon*, 265 F.3d at 1375; *Halliburton*, 514 F.3d at 1249-50.

## IV.  CONCLUSION

The Court hereby **ORDERS** the disputed claim terms construed as set forth above.

**IT IS SO ORDERED.**

 **SIGNED this 14th day of February, 2012.**


DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

34